**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
             jsmith@bursor.com
             ykrivoshey@bursor.com
             treyda@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN, on Behalf of Himself and all Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>BLACKBAUD, INC.,<br><br>                    Defendant. | Case No. 2:18-cv-3549 AB (KSx)<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William Brown ("Plaintiff"), brings this class action complaint against Blackbaud, Inc. ("Blackbaud" or "Smart Tuition").  Plaintiff's allegations are based upon personal knowledge as to his own acts and upon information and belief as to all other matters.

## NATURE OF ACTION

1.     Blackbaud is a publicly traded company that specializes in providing cloud software and services for fundraising campaigns.  In 2015, Blackbaud acquired a company called Smart Tuition, which provides student billing and payments processing platforms for private schools in the Kindergarten through 12th grade sector.  Since that time, Blackbaud has taken over all Smart Tuition operations and has continued providing Smart Tuition services to private schools and parents across the nation.  Accordingly, for the purposes of this complaint, all references to Smart Tuition and Blackbaud will refer to the Defendant, Blackbaud, Inc.

2.     Private schools that use Smart Tuition's services require that parents (or students themselves) sign up for a Smart Tuition account through Smart Tuition's website.  Parents can then input payment methods (credit and checking accounts) and make one-time and monthly tuition payments to their respective private schools through Smart Tuition's online portal.  Alternatively, parents can sign up for Smart Tuition services and mail payment to Smart Tuition via check.  Smart Tuition then transmits such tuition payments to the respective schools under agreements between the schools and Smart Tuition.

3.     Whenever parents are late to make a tuition payment, Smart Tuition charges parents set late fees ("Late Fees") and follow-up fees ("Follow-Up Fees") pursuant to Smart Tuition's terms of service and agreements that Smart Tuition forces parents to enter into (the "Enrollment Agreement").  The Follow-Up Fees are charged *in addition to* any Late Fees that may be charged by the respective schools,

and, accordingly, parents may be forced to pay multiple fees (to Smart Tuition and the school) for being late with one payment.

4.     Although Smart Tuition purports to disburse collected Late Fees back to the respective schools, Smart Tuition charges parents Follow-Up Fees directly and does not disburse a single dollar of Follow-Up Fees back to the schools.  Smart Tuition does not charge the respective schools any amount of money for any purported follow-up services, and the respective schools do not pass on any amount of the Follow-Up Fees to the parents.  Rather, Smart Tuition charges parents the entire amounts of the Follow-Up Fees and retains 100 percent of the proceeds from the Follow-Up Fees collected.

5.     Smart Tuition's Follow-Up Fees are nothing more than disguised, larger Late Fees charged to parents for their late payment of a tuition bill.  The only "follow-up" that is provided to parents is an *automated* email sent out after a payment has not been made on time notifying parents of their delinquency and providing instructions for how to make a payment.[1]  The "follow-up emails" do not contain the disclosures required by California and Federal law, including but not limited to 15 U.S.C. § 1692g(a)(3) and (4).

6.     Parents are not provided notice of any kind that Smart Tuition is actually charging Follow-Up Fees.  Instead, the Follow-Up Fees are disguised under the name "Late Fee" in statements sent to parents and combined with the actual Late Fees charged by the school.  Thus, in the case of Plaintiff (and other class members), Smart Tuition's billing records reflect only that he was being charged $50 Late Fees and have no record of a Follow-Up Fee ever been charged.   In fact, however, the $50 "Late Fee" reflected on the bill consists of a $10 Late Fee and a $40 Follow-Up

---

[1] An example of a "follow-up" email sent to Plaintiff by Defendant dated June 14, 2018 has been attached hereto as Exhibit 1.

Fee.[2]  The $10 Late Fee is then presumably disbursed to the school, while the $40 Follow-Up Fee is retained wholly by Smart Tuition.  Plaintiff and other class members thus are deceived into believing that they are paying Late Fees to the school, when, in fact, a significant percentage of the Late Fees billed (in Plaintiff's case, 80 percent) are retained by Smart Tuition.

7.  Smart Tuition's provision of tuition payment services in California is and all times relevant hereto has been subject to Smart Tuition's Enrollment Agreement.  The Enrollment Agreement remains in effect as of the date of this Complaint.  The Enrollment Agreement provides that Smart Tuition will impose a Late Fee and Follow-up Fee of a set sum (in Plaintiff's case, $10 Late Fee and a $40 Follow-up Fee) whenever Smart Tuition does not receive payment by a specified due date.

8.  The precise amount of the Late Fees and Follow-Up Fees are not disclosed in the Enrollment Agreement, and the Enrollment Agreement does not expressly authorize Defendant to charge the arbitrarily high Follow-Up Fees charged.  However, Defendant predetermines the precise lump-sum amount of the Late Fees and Follow-Up Fees at the beginning of every school year, and then charges such precise lump-sum amounts to all class members that are late to make a tuition payment.  Thus, in Plaintiff's case, Defendant predetermined that the Late Fee amount for the 2017-2018 school year would be $10, and the Follow-Up Fee would be $40.  As discussed above, on class members' and Plaintiff's bills, the Late Fees and Follow-Up Fees were then billed as one lump charge called a "Late Fee."

9.  The Late Fee and Follow-Up Fee provision is contained in *one* provision of the online Enrollment Agreement titled "Late Fees."  The Enrollment Agreement's Late Fees provision states that following:

---

[2] For an example of the billing statement reflecting the $50 Late Fee (which, in fact, consists of a $10 Late Fee and a $40 Follow-Up Fee), Plaintiff has attached hereto a copy of his August 2017 to June 2018 billing statement as Exhibit 2.

**Late Fees:** Any payment that is not received by Smart Tuition by your due date is considered late and may receive a late fee.  In the vent that your account becomes delinquent, Smart Tuition may provide your school a follow-up service which will contact you via mail, telephone, or e-mail.  Your account may be charged a fee as a result of this service.  This fee is in addition to any late fees charged by your school.

10.     The "Late Fee" Provision is displayed in tiny text in a window that users have the option of "scrolling" through.  The fact that Plaintiff and class members could be charged for Follow-Up Fees *cannot be seen* by Plaintiff and class members *without scrolling through the window*.  Even if consumers were to scroll through the window, the fact that Follow-Up Fees are charged at all is buried within the "Late Fee" provision and not readily apparent to Plaintiff and class members, as the section is simply called "Late Fees."  As discussed above, Plaintiff and class members are not notified that they are being charged Follow-Up Fees even on their billing statements, as the Follow-Up Fees are disguised as part of one charge that states "Late Fee."

11.     Smart Tuition's provision of services to parents pursuant to the Enrollment Agreement is not free.  Parents are forced to pay a set fee at the beginning of every school year for the use of Smart Tuition's services.  As of the 2017-2018 school year, Smart Tuition's fee for parents, including Plaintiff, to use its services was $50.

12.     As is set forth more particularly below, Plaintiff and the members of the proposed plaintiff class are individuals who are or were Defendant's customers who used Defendant's services in the State of California, and who paid Follow-Up Fees in connection with services rendered in the State of California.

13.     The Follow-Up Fees have generated substantial revenues and profits for Defendant.  By this complaint, Plaintiff seeks, *inter alia*, to permanently enjoin the enforcement and threat of collection of the Follow-Up Fees and to recover as damages and/or restitution all Follow-Up Fees heretofore paid by members of the plaintiff class.

14.     The Follow-Up Fees constitute unlawful penalties that are void and unenforceable under California Civil Code § 1671 ("§ 1671"); unlawful and unfair under California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*. (the "UCL"); and unconscionable under California Civil Code § 1750 *et seq*., the Consumers Legal Remedies Act (the "CLRA").  Defendant's collection of the underlying tuition payments, Late Fees, and Follow-Up Fees also violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, *et seq*., and the California Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code 1788, *et seq*.

15.     Plaintiff therefore seeks, as alleged with greater particularity below, to (a) permanently enjoin Defendant from collecting the Follow-Up Fees; (b) impose constructive trusts on all amounts by which Defendant was unjustly enriched as a result of collecting the Follow-Up Fees; (c) recover as damages and/or restitution all Follow-Up Fees heretofore paid by members of the plaintiff class; and (d) obtain all such other relief to which they may be entitled pursuant to Civil Code § 1671, the UCL, the FDCPA, the Rosenthal Act, or any other applicable provision of California law, including, without limitation, disgorgement, actual damages and restitution.

## **THE PARTIES**

16.     Plaintiff is a citizen of California, residing in Ventura, California. Plaintiff was forced to sign up for Smart Tuition services because he had three children attend a private school in Ventura, California (Our Lady of Assumption) that required the use of Smart Tuition to make tuition payments.  Two of Plaintiff's minor children are still enrolled at the same school, and, accordingly, Plaintiff is forced to continue using Smart Tuition pursuant to the Enrollment Agreement. Within the past four years, Plaintiff has repeatedly incurred and paid Follow-Up Fees in California pursuant to the Enrollment Agreement for services rendered in California.  Indeed, since August of 2015, Defendant has charged Plaintiff at least 28

Follow-Up Fees (disguised as Late Fees) for purported late payment of tuition under the Enrollment Agreement, each at $40 for the respective month's past-due payment. Accordingly, since August of 2015, Defendant has charged, and Plaintiff has paid, at least $1400 in Late Fees, of which $1120 was Follow-Up Fees retained entirely by Smart Tuition and not disbursed to his children's school.

17.     As a result thereof, Plaintiff suffered an injury in fact resulting in the loss of money and/or property.

18.     Defendant Blackbaud, Inc. is a corporation organized under the laws of Delaware and has its principal place of business in South Carolina.  At all relevant times, Defendant was in the business of providing tuition payment services pursuant to the Enrollment Agreement to individuals in California.  Under the Enrollment Agreement, Defendant imposed, pursued, and collected Follow-Up Fees provided for in the Enrollment Agreement in California.  Defendant is a debt collector as defined by 15 U.S.C. 1692a and Cal. Civ. Code § 1788.2(c).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have a different citizenship from Defendant; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. See 28 U.S.C. § 1332(d)(2) and (6).

20.     This Court has personal jurisdiction over Defendant because Defendant is registered with the California Secretary of State to conduct business within California and conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California.

21.     Venue is proper in this Court under 28 U.S.C. § 1381(b) because Defendant transacts significant business within this District.  Venue is also proper under 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

22.     Smart Tuition provides an electronic tuition and fee payment platform to parents of private school students in the State of California.  Specifically, many schools throughout California require the parents of their students to sign up for Smart Tuition's online portal and to make all tuition and fee payments through Smart Tuition.

23.     To use Smart Tuition's services, Smart Tuition requires that customers create an online account and agree to an Enrollment Agreement.  Alternatively, parents can sign up for Smart Tuition services subject to the Enrollment Agreement and mail payment to Smart Tuition via check.  The Enrollment Agreement was drafted entirely by Defendant and/or its affiliates, is not subject to modification or negotiation and is presented to prospective customers on a "take it or leave it" basis.  The Enrollment Agreement is a contract of adhesion under California law.

24.     Plaintiff is, and at all times relevant hereto has been, a Smart Tuition user subject to the Enrollment Agreement.

25.     The Enrollment Agreement has at all times relevant hereto included a Late Fee and Follow-Up Fee provision which provides for the imposition of Late Fees and Follow-Up Fees.  The Enrollment Agreement provides that Smart Tuition will impose a Late Fee and Follow-Up Fees of a set sum (in Plaintiff's case, $10 Late Fee and a $40 Follow-Up Fee) whenever Smart Tuition does not receive payment by a specified due date.

26.     Defendant has in fact imposed such Late Fees and Follow-Up Fees on, and collected them from, Plaintiff and other members of the proposed class.

27.     Defendant has collected significant revenues from imposing Follow-Up Fees on Plaintiff and the members of the proposed class.

28.     If and to the extent that Defendant suffers, would suffer or has suffered any damage upon late payment, it is neither impracticable nor extremely difficult to fix the actual damage.  Furthermore, if and to the extent that Defendant suffers, would suffer, or has suffered any damage upon late payment, the Follow-Up Fees are not a reasonable measure or approximation of such damages and do not provide fair average compensation therefor.  Moreover, they are – and under the circumstances existing at the time the Enrollment Agreement was made, were – unreasonable.  On information and belief, Defendant did not conduct a reasonable endeavor to fix fair average compensation for losses, if any, that it incurs, would incur or has incurred by virtue of late payments.  The Follow-Up Fees were not negotiated or discussed with Plaintiff or the members of the proposed class.

29.     The Follow-Up Fees imposed by Defendant are unconscionable, void and unenforceable under Civil Code §§ 1670.5, 1671(b) and/or 1671(d), constitute an unlawful, unfair and deceptive practice under the UCL, violate the CLRA, including without limitation Civil Code §§ 1770(a)(14) and 1770(a)(19).  Further, Defendant's collection of tuition, Late Fees, and Follow-Up Fees violates the FDCPA, 15 U.S.C. 1692, *et seq*., and the Rosenthal Act (the "Rosenthal Act"), Cal. Civ. Code 1788, *et seq*.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of the following class (the "Follow-Up Fee Class"):

> All persons nationwide who paid one or more Follow-Up Fees imposed by Defendant pursuant to the Enrollment Agreement.  Any judicial officer to whom the Action is assigned is excluded from the Follow-Up Fee Class.  Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest are also excluded from the Follow-Up Fee Class.

31.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of the following class (the "California Follow-Up Fee Subclass"):

> All California residents who paid one or more Follow-Up Fees imposed by Defendant pursuant to the Enrollment Agreement with respect to tuition obligations imposed by a school located within California. Any judicial officer to whom the Action is assigned is excluded from the California Follow-Up Fee Subclass. Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest are also excluded from the California Follow-Up Fee Subclass.

32.     Plaintiff also brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of the following class (the "Email Class"):

> All persons nationwide who received an automated follow-up email from Defendant concerning the late payment of tuition. Any judicial officer to whom the Action is assigned is excluded from the Email Class. Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest are also excluded from the Email Class.

33.     Plaintiff also brings this action as a class action under Federal Rule of Civil Procedure on behalf of the following class (the "California Email Subclass"):

> All California residents who received an automated follow-up email from Defendant concerning the late payment of tuition with regards to a school located within California. Any judicial officer to whom the Action is assigned is excluded from the California Email Subclass. Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest are also excluded from the California Email Subclass.

34.     Plaintiff is a member of the Class he seeks to represent.

35.     The aforementioned classes shall be referred to collectively as the "Classes." The Classes are so numerous that joinder of all members is impractical. Although Plaintiff does not yet know the exact size of the Classes, dozens, and potentially hundreds, of schools (with hundreds or thousands of parents per school)

in California and nationwide require parents to use Smart Tuition for tuition payments.  Many parents have complained online about being forced to pay Follow-Up Fees to Smart Tuition.

36.     The Classes are ascertainable because the Classes' members can be identified by objective criteria – the payment of Follow-Up Fees or receipt of a follow-up email during the Class Period, as can be ascertained through Defendant's records.  Individual notice can be provided to the Classes' members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

37.     There are numerous questions of law and fact common to the Classes which predominate over any individual actions or issues, including but not limited to:

(a) Whether Defendant's Follow-Up Fees are illegal, void and unenforceable contractual penalties pursuant to Civil Code § 1671(d);

(b) Whether damages are extremely difficult or impracticable to determine;

(c) Whether Defendant conducted a reasonable endeavor, prior to imposing the Follow-Up Fees or including them in the Enrollment Agreement, to fix fair average compensation for losses, if any, that it suffers when its customers pay late, and if so, whether the Follow-Up Fees reflect the results of such a reasonable endeavor;

(d) Whether Defendant's Follow-Up Fees are unconscionable;

(e) Whether Defendant's Follow-Up Fees violate the UCL;

(f) Whether Defendant's Follow-Up Fees violate the CLRA;

(g) Whether Defendant's collection of the Follow-Up Fees violates the FDCPA;

(h) Whether Defendant's collection of the Follow-Up Fees violates the Rosenthal Act;

(i) Whether Defendant's follow-up emails violate the disclosure requirements of the FDCPA and the Rosenthal Act;

(j) Whether Classes' Members suffered an ascertainable loss as a result of Defendant's Follow-Up Fees and follow-up emails;

(k) Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Classes members are entitled to restitution, disgorgement, injunctive and/or monetary relief and, if so, the amount and nature of such relief; and

(l) Whether Plaintiff and the Classes Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this suit.

38.     Plaintiff's claims are typical of the claims of the members of the Classes, having paid Follow-Up Fees to Defendant pursuant to the Enrollment Agreement and having received follow-up emails that do not contain the disclosures required by the FDCPA and the Rosenthal Act.  Plaintiff and the proposed Classes have similarly suffered harm arising from Defendant's violations of the law, as alleged herein.

39.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes Members he seeks to represent, he has retained counsel competent and experienced in prosecuting class action, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of the Classes Members.

40.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Classes Members.  Each individual Classes Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## FIRST CAUSE OF ACTION

### Violation of California Civil Code § 1671(d)

41.     Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

42.     Plaintiff brings this claim individually and on behalf of the members of the California Follow-Up Fee Subclass against Defendant.

43.     The Follow-Up Fees are impermissible liquidated damages provisions under California law.  The Follow-Up Fees themselves, the contractual provisions that provide for them and their imposition and collection by Defendant violate Civil Code § 1671(d) and are unlawful, void and unenforceable under that statute.

44.     Civil Code § 1671(d) states that a contractual provision, in a contract for the retail purchase or rental of personal property or services primarily for the party's personal, family, or household purposes, liquidating damages for the breach of the contract, is void except that the parties to such a contract may agree therein on an amount that shall be presumed to be the amount of the damage sustained by a breach thereof, when, from the nature of the cause, it would be impracticable or extremely difficult to fix that actual damage.  The Enrollment Agreement is a contract for the purchase of services primarily for personal, family or household use of Plaintiff and the members of the Classes.

45.     If and to the extent that Defendant suffers, would suffer or has suffered any damages due to late payments by Plaintiff or members of the California Follow-

Up Fee Subclass, it would not be impracticable, nor would it be extremely difficult, to determine them with certainty.  Furthermore, the liquidated damages in the Enrollment Agreement do not reflect a reasonable endeavor by Defendant to fix fair average compensation for any harm that Defendant would suffer, may suffer or have suffered, if any, from the late payment of tuition.  The Enrollment Agreement is a contract of adhesion drafted by Defendant and/or its parents, subsidiaries or affiliates and presented to prospective customers on a "take it or leave it" basis with no opportunity for any prospective customer to negotiate any of its terms and conditions.  The Follow-Up Fees provision in the Enrollment Agreement is a liquidated damages provision that fails to comply with the standards set forth in Civil Code § 1671(d), and therefore constitutes impermissible contractual penalties. Defendant's imposition of Follow-Up Fees on Plaintiff and the members of the California Follow-Up Fee Subclass violates, and at all times relevant here to has violated, § 1671(d).  Defendant's collection of Follow-Up Fees from Plaintiff and the members of the California Follow-Up Fee Subclass likewise violates, and at all times relevant hereto has violated, Civil Code § 1671(d).

46.     Plaintiff and the members of the California Follow-Up Fee Subclass have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein.  Pursuant to Civil Code § 1671(d), Plaintiff, individually and on behalf of the members of the California Follow-Up Fee Subclass, seeks an order of this Court preliminarily and permanently enjoining Defendant from further enforcement and collection of Follow-Up Fees as alleged herein.  Plaintiff also seeks an order:

   a.   Requiring Defendant to cease their unlawful acts and practices;

   b.   Directing Defendant to make full restitution of all monies wrongfully obtained;

   c.   Forcing Defendant to disgorge all ill-gotten revenues and/or profits; and

d.  Providing such other and further relief as may be just and proper.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act,**

**California Civil Code §§ 1750 *et seq*.**

47.     Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

48.     Plaintiff brings this claim individually and on behalf of the members of the California Follow-Up Fee Subclass against Defendant.

49.     Defendant has engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civil Code § 1750, *et seq*., to the detriment of Plaintiff and the members of the California Follow-Up Fee Subclass. Plaintiff and the members of the California Follow-Up Fee Subclass have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein.

50.     Defendant intentionally, knowingly, and unlawfully perpetrated harm upon Plaintiff and the California Follow-Up Fee Subclass members by inserting unconscionable, unenforceable and illegal provisions in their Agreements with Plaintiff and the California Follow-Up Fee Subclass members in violation of Civil Code § 1770(a)(19), and by enforcing those provisions.  By inserting an unconscionable, unenforceable and void Follow-Up Fees provision in the Enrollment Agreement, and then enforcing that provision by imposing and collecting Follow-Up Fees, Defendant also violated Civil Code § 1770(a)(14), which prohibits them from representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

51.     Defendant's policy and practice with respect to their inclusion of Follow-Up Fees in their Enrollment Agreement and their collection of Follow-Up

Fees is unlawful, unethical, oppressive, fraudulent and malicious.  The gravity of the harm to all consumers from Defendant's policies and practices far outweighs any purported utility those policies and practices have.

52.     Plaintiff and the members of the California Follow-Up Fee Subclass have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein and will continue to suffer such harm if Defendant's illegal practices are not abated.

53.     Prior to the filing of this complaint, a CLRA notice letter (and the initial Complaint in this action) was served on Defendant which complies in all respects with California Civil Code § 1782(a).  Defendant was advised that in the event that the relief requested had not been provided within thirty days, Plaintiff would bring an action for damages pursuant to the CLRA.  Wherefore, Plaintiff seeks damages, including punitive damages, restitution, and injunctive relief for this violation of the CLRA.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Unlawful Business Practices in Violation of the Unfair Competition Law California Business and Professions Code §§ 17200 *et seq*.**

54.     Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the members of the California Follow-Up Fee Subclass and the California Email Subclass against Defendant.

56.     Defendant's continuing imposition, enforcement and collection of unlawful, unconscionable and unenforceable Follow-Up Fees constitutes an unlawful business practice in violation of Bus. & Prof. Code §§ 17200 *et seq*.  Further, Defendant's imposition and collection of the Follow-Up Fees violates 15 U.S.C. §

1692f and Cal. Civ. Code § 1788.14(b).  Defendant's collection of tuition payments, Late Fees, and Follow-Up Fees, and the sending of follow-up emails without proper disclosures also violate 15 U.S.C. § 1692g(a)(3) and (4), 15 U.S.C. § 1692e(2), (10), and Cal. Civ. Code § 1788.17.

57.    Plaintiff and the members of the California Follow-Up Fee Subclass and the California Email Subclass have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein.

58.    Civil Code § 1671(d) states that a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein on an amount that shall be presumed to be the amount of the damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

59.    The Follow-Up Fees charged by Defendant to, and collected by Defendant from, Plaintiff and the members of the California Follow-Up Fee Subclass are unlawful liquidated damages provisions under Civil Code § 1671(d) for the reasons set forth above.  As a result of their inclusion of the Follow-Up Fees provisions in the Enrollment Agreement, and their imposition and collection of the Follow-Up Fees, Defendant has violated Civil Code § 1671(d), Cal. Civ. Code § 1788.14(b) and 15 U.S.C. 1692f.

60.    The inclusion of the Follow-Up Fees provision in the Enrollment Agreement, and Defendant's imposition of the Follow-Up Fees on, and collection of the Follow-Up Fees from, Plaintiff and the members of the California Follow-Up Fee Subclass also violate Civil Code § 1670.5 because the Follow-Up Fees are unconscionable.  Prospective customers have no meaningful choice with respect to the inclusion of the Follow-Up Fees in the Enrollment Agreement nor in the amount of the Follow-up Fees.  The Enrollment Agreement is drafted by Defendant and presented to prospective members on a "take it or leave it" basis with no opportunity

or possibility of negotiating any different terms and conditions with Defendant. Indeed, as discussed above, the Follow-Up Fees are hidden in a scroll-through window, the amount of the fees are not disclosed up front, and they are disguised as "Late Fees" in customers' billing statements.

61.     The Follow-Up Fees are unreasonably favorable to Defendant and unduly harsh with respect to Defendant's customers, and therefore, are substantively unconscionable.  For example, the Follow-Up Fees have no relationship whatsoever to any damages incurred by Defendant, if any, as a result of late payment by customers.

62.     The Follow-Up Fees charged to Plaintiff and the members of the California Follow-Up Fee Subclass also violate the Consumers Legal Remedies Act, Civil Code § 1750 *et seq*., as they are unconscionable, unenforceable and illegal provisions in violation of Civil Code §§ 1770(a)(14) and 1770(a)(19).

63.     Plaintiff and the members of the California Follow-Up Fee Subclass have suffered an injury in fact resulting in the loss of money or property as a result of having paid the Follow-Up Fees.

64.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Defendant from continuing to engage in their unfair and unlawful conduct as alleged herein.  Plaintiff also seeks, *inter alia*, an order requiring Defendant to:

    a.  Immediately cease their unlawful acts and practices;

    b.  Make full restitution of all monies wrongfully obtained; and

    c.  Disgorge all ill-gotten revenues and/or profits.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

# FOURTH CAUSE OF ACTION

## Unfair Business Practices in Violation of Business and Professions Code §§ 17200 *et seq*.

65.     Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

66.     Plaintiff brings this claim individually and on behalf of the members of the California Follow-Up Fee Subclass against Defendant.

67.     The conduct of Defendant, as herein alleged, constitutes an unfair business practice within the meaning of Bus. & Prof. Code §§ 17200, *et seq*.

68.     Defendant violated the "unfair" prong of the UCL by requiring customers to enter into contracts of adhesion that include the Follow-Up Fees provision, by enforcing the contractual provisions that provide for the imposition of the Follow-Up Fees and by imposing and collecting the Follow-Up Fees, by hiding the Follow-Up Fees in a scroll-through window of the Enrollment Agreement, and by hiding the fact that it charges Follow-Up Fees by disguising the Follow-Up Fees as "Late Fees" on customers' billing statements.

69.     Defendant's said practices with respect to Follow-Up Fees violate the "unfair" prong of the UCL because the Follow-Up Fees: (1) constitute unfair and wrongful penalties inconsistent with the language and policy of Civil Code § 1671; and (2) constitute unconscionable provisions, in violation of various laws and policies recognized by the California Legislature and the California courts, including without limitation Civil Code § 1670.5 and the CLRA.

70.     Defendant's said practices with respect to the Follow-Up Fees also violate the "unfair" prong of the UCL because the utility of the Follow-Up Fees is significantly outweighed by the gravity of the harm that they impose on consumers. The Follow-Up Fees have limited or no utility as compared with alternatives that would more fairly measure the harm (if any) incurred by Defendant when a customer

makes a late payment.  The gravity of the harm that the Follow-Up Fees impose on consumers is substantial in that they exceed the actual amount of harm (if any) incurred by Defendant when a member makes a late payment.  Through their imposition and collection of the Follow-Up Fees from the members of the California Follow-Up Fee Subclass, Defendant has been massively and unjustly enriched. Defendant's Follow-Up also violate the "unfair" prong of the UCL because their inclusion in the Enrollment Agreement, imposition and collection are and at all times relevant hereto have been oppressive, unscrupulous or substantially injurious to consumers.

71.     Defendant's said practices with respect to the Follow-Up Fees also violate the "unfair" prong of the UCL because the Follow-Up Fees, the provision of the Enrollment Agreement imposing the Follow-Up Fees, and Defendant's enforcement of them through the imposition and collection thereof cause substantial harm that is not outweighed by countervailing benefits to consumers or competition, and consumers could not reasonably have avoided the harm.

72.     Defendant's practices with respect to the Follow-Up Fees also violate the "unfair" prong of the UCL for the reasons set forth in the Third Cause of Action, above.

73.     Plaintiff and the members of the California Follow-Up Fee Subclass have suffered an injury in fact resulting in the loss of money or property as a result, *inter alia*, of having paid the Follow-Up Fees.

74.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Defendant from continuing to engage in their unfair and unlawful conduct as alleged herein.  Plaintiff also seeks an order, *inter alia*, requiring Defendant to:

        a.     Immediately cease their unlawful acts and practices;

        b.     Make full restitution of all monies wrongfully obtained; and

1        c.     Disgorge all ill-gotten revenues and /or profits.

2      WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### Violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.*

75.    Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

76.    Plaintiff brings this claim individually and on behalf of the members of all Classes against Defendant.

77.    Defendant's course of conduct as more fully described above constitutes numerous and multiple violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, including but not limited to 15 U.S.C. § 1692g(a)(3) and (4), 15 U.S.C. § 1692f, and 15 U.S.C. § 1692e(2), (10).  Specifically, Plaintiff asserts violations of 15 U.S.C. § 1692g(a)(3) and (4) on behalf of the Email Class and California Email Subclass, and asserts violations of 15 U.S.C. § 1692f, and 15 U.S.C. § 1692e(2) and (10) on behalf of the Follow-Up Fee Class and California Follow-Up Fee Subclass.

78.    The tuition, Late Fees, and Follow-Up Fees that Defendant collected are "consumer debt" and "consumer credit transactions" within the meaning of the FDCPA and the Rosenthal Act.

79.    As a result of Defendant's actions, Plaintiffs and the Classes are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs, pursuant to 15 U.S.C. 1692k, et seq.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### Violations of the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code 1788, *et seq.*

80.    Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

81.   Plaintiff brings this claim individually and on behalf of the members of the California Follow-Up Fee Subclass and the California Email Subclass against Defendant.

82.   The foregoing acts and omissions by Defendant in its illegal attempt to collect a consumer debt constitute numerous unfair, deceptive, and/or unconscionable trade practices, made unlawful pursuant to the California Rosenthal Fair Debt Collections Practices Act, including but not limited to Cal. Civ. Code § 1788.14(b) and Cal. Civ. Code § 1788.17 (which requires Defendant to comply with all of the provisions of the FDCPA in all of its collection efforts).

83.   The tuition, Late Fees, and Follow-Up Fees that Defendant collected are "consumer debt" and "consumer credit transactions" within the meaning of the FDCPA and the Rosenthal Act.

84.   Therefore, Plaintiff and the California Follow-Up Fee Subclass and the California Email Subclass are entitled to recover statutory damages, actual damages, reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, prays:

A. For an order certifying the Classes and appointing Plaintiff and the undersigned counsel of record to represent the Classes;

B. For a permanent injunction enjoining Defendant, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, from in any way engaging in the unfair and unlawful practices and violations of law set forth herein;

C.  For full restitution of all funds acquired from Defendant's unfair business practices and other violations of law, including disgorgement of profits;

D.  For imposition of a constructive trust upon all monies and assets Defendant has acquired as a result of their unfair practices;

E.  For damages according to proof;

F.  For a judicial declaration regarding the validity of Defendant's liquidated damages provisions in the Enrollment Agreement, and the validity of the follow-up emails;

G.  For costs of suit herein;

H.  For both pre- and post-judgment interest on any amounts awarded;

I.  For payment of reasonable attorneys' fees; and

J.  For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  July 20, 2018                    Respectfully submitted,

                                         **BURSOR & FISHER, P.A.**

                                         By:_____*/s/ Yeremey O. Krivoshey*_____
                                                 Yeremey O. Krivoshey

                                         L. Timothy Fisher (State Bar No. 191626)
                                         Joel D. Smith (State Bar No. 244902)
                                         Yeremey O. Krivoshey (State Bar No.295032)
                                         Thomas A. Reyda (State Bar No. 312632)
                                         1990 North California Blvd., Suite 940
                                         Walnut Creek, CA  94596
                                         Telephone: (925) 300-4455
                                         Facsimile: (925) 407-2700
                                         Email: ltfisher@bursor.com
                                               jsmith@bursor.com
                                               ykrivoshey@bursor.com
                                               treyda@bursor.com

                                         **BURSOR & FISHER, P.A.**
                                         Scott A. Bursor (State Bar No. 276006)

888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Counsel for Plaintiff*