JAMES R. MCGUIRE (CA SBN 189275)
JMcGuire@mofo.com
SARAH N. DAVIS (CA SBN 275145)
SarahDavis@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
BLACKBAUD, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN, on Behalf of Himself and all Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>BLACKBAUD, INC.,<br><br>                    Defendant. | Case No. 2:18-cv-3549 AB (KSx)<br><br>**NOTICE OF MOTION AND MOTION IN SUPPORT OF DEFENDANT BLACKBAUD, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:      October 19, 2018<br>Time:      10:00 a.m.<br>Ctrm:      7B<br><br>Hon. André Birotte Jr. |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 19, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable André Birotte Jr., United States District Court, Central District of California, Courtroom 7B, 350 West First Street, Los Angeles, California, 90012, defendant Blackbaud, Inc., will and hereby does move the Court for an order dismissing the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Marissa Torsiello in Support of Motion of Defendant Blackbaud, Inc. to Dismiss the Complaint, the records in this action, and such other written and oral argument as may be presented to the Court.

This motion is made following the conference of counsel pursuant to Civil Local Rule 7-3 which took place on August 17, 2018.

Dated: August 24, 2018                    MORRISON & FOERSTER LLP

By: /s/ James McGuire

——————————————————————
James R. McGuire
Attorneys for Defendant
BLACKBAUD, INC.

1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................... 1

II.   FACTUAL BACKGROUND ...................................................... 2

III.  PROCEDURAL HISTORY ........................................................ 6

IV.   LEGAL STANDARD ............................................................... 7

V.    ARGUMENT ........................................................................... 8

    A.   Plaintiff's Section 1671 Claim Fails Because Smart Tuition's Follow-Up Service Fee is Not Triggered By Plaintiff's Breach of A Contract with Smart Tuition. ........................................ 8

    B.   The Deficiencies in Plaintiff's Section 1671 Claim Demonstrate That Plaintiff Lacks Standing for All of His Claims. ......................... 10

        1.   Plaintiff Cannot Create Standing By Adding Allegations that are Contradicted by the Underlying Documents. ............... 10

        2.   Plaintiff Lacks Standing to Challenge the Follow-Up Service Fee Directly Under Section 1671. ............................... 12

        3.   Because Plaintiff Lacks Standing To Challenge the Follow-Up Service Fee Directly, His CLRA and UCL Claims Also Fail. ........................................................ 13

    C.   Plaintiff Cannot State a Claim Under Either the FDCPA or the Rosenthal Act. ................................................................. 14

        1.   Plaintiff's FDCPA Claims Fail Because Smart Tuition is Not a "Debt Collector." ............................................... 14

        2.   The Rosenthal Act Does Not Apply Because Plaintiff's Tuition Payments, Late Fees, and Follow-Up Service Fees are Not "Debts." ................................................... 16

    D.   Plaintiff's CLRA Claim Also Fails Because Smart Tuition's Follow-Up Service Fee Is Neither Prohibited Nor Unconscionable. ................................................................ 19

        1.   The CLRA Does Not Apply. ......................................... 19

        2.   Plaintiff Fails to Plead a Predicate Violation. .................. 19

        3.   The Follow-Up Service Fee is Not Unconscionable. .......... 20

            a.   Plaintiff Does Not Allege Any Facts to Support Procedural Unconscionability. ................................ 20

i

**TABLE OF CONTENTS**
(continued)

**Page**

b. Plaintiff Does Not Allege Any Facts to Support Substantive Unconscionability Either. ..............................21

E. Plaintiff's UCL Claims Should Be Dismissed Because He Has Not Alleged a Predicate Violation to Support His Unlawful Claim or Sufficient Facts to Support His Conclusory Unfairness Claim. .................................................................22

1. Plaintiff Fails to State an "Unlawful" Claim. .............................23

2. Plaintiff Fails to State an "Unfair" Claim. ...................................23

VI. CONCLUSION .................................................................25

ii

sf-3929981

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abels v. JBC Legal Grp.*,
   428 F. Supp. 2d 1023 (N.D. Cal. 2005)...............................................................17

5

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014)...................................................................11

6

7

*Am. Software, Inc. v. Ali*,
   46 Cal. App. 4th 1386 (1996)................................................................................21

8

*Andrew Smith Co. v. Paul's Pak, Inc.*,
   754 F. Supp. 2d 1120 (N.D. Cal. 2010)...............................................................12

9

10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................7

11

*Baba v. Hewlett-Packard Co.*,
   No. C 09-05946 RS, 2010 WL 2486353
   (N.D. Cal. June 16, 2010)....................................................................................24

12

13

*Beasley v. Wells Fargo Bank*,
   235 Cal. App. 3d 1383 (1991) .......................................................................5 n.5

14

*Beeks v. ALS Lien Servs.*,
   No. CV 12-2411 FMO (PJWx), 2014 WL 7785745
   (C.D. Cal. Feb. 18, 2014) .................................................................10 n.8, 12, 13

15

16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................7

17

18

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007)......................................................................*passim*

19

*Cabrera v. Countrywide Fin.*,
   No. 11-4869 SI, 2012 WL 5372116 (N.D. Cal. Oct. 30, 2012) ..........................14

20

21

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996)....................................................................................7

22

23

*Cal. Grocers Ass'n v. Bank of Am.*,
   22 Cal. App. 4th 205 (1994).................................................................................21

24

*Chodos v. W. Publ'g Co.*,
   292 F.3d 992 (9th Cir. 2002)..................................................................................8

25

26

*Cleveland v. Deutsche Bank Nat'l Trust Co.*,
   No. 08-cv-0802 JM(NLS), 2009 WL 250017
   (S.D. Cal. Feb. 2, 2009).......................................................................................14

27

28

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Davidson v. Seterus,*
   21 Cal. App. 5th 283 (2018) ................................................. 17

4

*De Dios v. Int'l Realty & RC Invs.,*
   641 F.3d 1071 (9th Cir. 2011) ........................................ 15, 16

5

6

*Dean Witter Reynolds, Inc. v. Superior Court,*
   211 Cal. App. 3d 758 (1989) ............................................... 23

7

*Distor v. US Bank NA,*
   No. C 09-02086 SI, 2009 WL 3429700 (N.D. Cal. Oct. 22, 2009) ........... 16 n.11

8

9

*Durham v. Cont'l Cent. Credit,*
   No. 07cv1763 BTM(WMc), 2009 WL 3416114
   (S.D. Cal. Oct. 20, 2009) .................................................. 18

10

*Franceschi v. Mautner-Glick Corp.,*
   22 F. Supp. 2d 250 (S.D.N.Y. 1998) ................................ 15, 16

11

12

*Hinrichsen v. Bank of Am., N.A.,*
   No. 17-cv-0219 DMS (RBB), 2018 U.S. Dist. LEXIS 119367
   (S.D. Cal. July 17, 2018) .................................................. 16

13

14

*Jara v. Aurora Loan Servs.,*
   852 F. Supp. 2d 1204 (N.D. Cal. 2012) ........................... 16 n.11

15

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) .......................................... 3 n.4

16

17

*Leasure v. Willmark Cmtys., Inc.,*
   No. 11-cv-00443 BEN (DHB) 2013 WL 6097944
   (S.D. Cal. Mar. 14, 2013) ............................ 15, 16 n.11, 17

18

19

*Lee v. City of L.A.,*
   250 F.3d 668 (9th Cir. 2001) ............................................. 8

20

*Loewen v. Lyft, Inc.,*
   129 F. Supp. 3d 945 (N.D. Cal. 2015) ................................. 20

21

22

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,*
   89 Cal. App. 4th 1042 (2001) ........................................... 21

23

24

*Morris v. Redwood Empire Bancorp,*
   128 Cal. App. 4th 1305 (2005) ................................. 8, 21, 22

25

*Paladino v. Cal. Bus. Bureau,*
   No. 14-CV-2364 W (MDD), 2015 WL 12532474
   (S.D. Cal. Nov. 17, 2015) ........................................ 16 n.11

26

27

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ........................................... 3 n.4

28

iv

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Perdue v. Crocker Nat'l Bank,*
  38 Cal. 3d 913 (1985) ................................................................. 9

*Phillips v. Archstone Simi Valley LLC,*
  No. CV 15-5559-DMG (PLAx), 2016 WL 7444550
  (C.D. Cal. Dec. 15, 2016) ..................................................... 17, 18

*Rich v. Bank of Am., N.A.,*
  666 F. App'x 635 (9th Cir. 2016) ......................................... 16

*Ruwe v. Cellco P'ship,*
  613 F. Supp. 2d 1191 (N.D. Cal. 2009) ............................... 8

*Schulz v. Cisco Webex, LLC,*
  No. 13-cv-04987-BLF, 2014 WL 2115168
  (N.D. Cal. May 20, 2014) ..................................................... 12

*Silcox v. State Farm Mut. Auto. Ins. Co.,*
  No. 14cv2345 AJB (MDD), 2014 WL 7335741
  (S.D. Cal. Dec. 22, 2014) ..................................................... 23

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) .......................................... 11, 12

*Steckman v. Hart Brewing, Inc.,*
  143 F.3d 1293 (9th Cir. 1998) .................................... 3 n.3, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ............................................................. 8

*Turner v. Cook,*
  362 F.3d 1219 (9th Cir. 2004) ............................................. 18

*Udo v. Kelkris Assocs., Inc.,*
  No. 12-CV-2022- IEG (NLS), 2012 WL 5985663
  (S.D. Cal. Nov. 29, 2012) ..................................................... 18

*Walter v. Hughes Commc'ns, Inc.,*
  682 F. Supp. 2d 1031 (N.D. Cal. 2010) ......................... 20, 21, 22

*Yatooma v. OP Prop. Mgmt. LP,*
  2:17-cv-02645 ODW, 2017 WL 3120259 (C.D. Cal. July 20, 2017) .......... 17, 18

**Statutes**

15 U.S. C. § 1692a(6) .......................................................... 14, 15

Cal. Bus. & Prof. Code
  § 17200 ............................................................................ 23 n.13
  § 17208 .............................................................................. 5 n.5

v

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Cal. Civ. Code
§ 1670.5 ................................................................................................. 23
§ 1671 .............................................................................................. *passim*
§ 1671(c) ......................................................................................... 10 n.8
§ 1671(d) ......................................................................................... 19, 23
§ 1761(e) ................................................................................................ 19
§ 1770(a) ............................................................................................... 19
§ 1770(a)(14) ......................................................................................... 19
§ 1770(a)(19) ...................................................................................... 19, 20
§ 1783 ............................................................................................... 5 n.5
§ 1788.1 ................................................................................................. 17
§ 1788.2(e) ................................................................................. 17, 17 n.12
§ 1788.2(f) ................................................................................. 17, 17 n.12

## Other Authorities

Fed. Trade Comm'n, Staff Commentary on the Fair Debt Collection
Practices Act § 803, 53 Fed. Reg. 50097 (Dec. 13, 1988) ......................... 15 n.10

S. Rep. No. 95-382 (1997), *as reprinted in* 1977 U.S.C.C.A.N. 1695............. 15 n.10

vi

## I.      INTRODUCTION

Plaintiff's children attend a private school, Our Lady of the Assumption, which has contracted with Smart Tuition for tuition management services. Plaintiff agreed to make his children's tuition payments using Smart Tuition's system. When Plaintiff failed to make his tuition payments on time, Our Lady of the Assumption (1) assessed him a late fee; and (2) passed on to him the fee Smart Tuition charges the school for follow-up services on delinquent accounts pursuant to the school's contract with Smart Tuition. Plaintiff expressly disclaims any challenge to the school's late fee. Instead, Plaintiff challenges the follow-up service fee that *Smart Tuition charges the school*, and that *the school has passed onto him*, as an additional "late fee" and argues that it is unlawful liquidated damages under California Civil Code section 1671 and a violation of the Consumer Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL"). Plaintiff now also alleges that Smart Tuition's follow-up services violate federal and state debt collection statutes. Plaintiff's claims are meritless and should be dismissed for several reasons.

First, the challenged fees are not liquidated damages under section 1671. Plaintiff does not have, and therefore has not breached, any agreement *with Smart Tuition* to make timely tuition payments. As such, the challenged fees obviously cannot be an attempt to "liquidate damages" for any such breach. *See* Cal. Civ. Code § 1671 (describing "provision in a contract liquidating the damages for the breach of the contract"). Indeed, Plaintiff's enrollment form for Smart Tuition's services provides that Smart Tuition processes payments (including any additional fees) on the *school's* behalf, which are deposited into the *school's* bank account. *Smart Tuition* simply does not charge *Plaintiff* any late fees or fees for follow-up services.

Second, and relatedly, the fees that Plaintiff challenges arise from the agreement between Smart Tuition and the school. Plaintiff has no standing to

1

recover from Smart Tuition under that contract either directly or indirectly through consumer protection claims.

<u>Third</u>, as to his newly added claims, neither the Fair Debt Collection Practices Act ("FDCPA") nor California's version of the FDCPA, the Rosenthal Act, apply to Smart Tuition's conduct.  The FDCPA applies only to "debt collectors" as defined by the statute, and expressly exempts entities like Smart Tuition that obtained the right to collect payments and associated fees prior to any default.  The Rosenthal Act does not apply either, because it only covers goods or services obtained on credit. Plaintiff has not alleged (nor could he) that Smart Tuition or Our Lady of the Assumption agreed to extend Plaintiff credit.

<u>Fourth</u>, the Court should dismiss Plaintiff's CLRA claims because Smart Tuition's services are not prohibited or unconscionable.  Plaintiff has not alleged that any statute prohibits a for-profit service provider, such as Smart Tuition, from charging service fees to its participant schools for the services it provides them.  Nor has Plaintiff alleged facts to support a claim that the fee provisions "shock the conscience" or are otherwise unconscionable under California law.

<u>Fifth</u>, Plaintiff's "unlawful" and "unfair" UCL claims fail because he has not sufficiently alleged any predicate violations, and he has failed to allege what is unfair to Plaintiff about a service provider charging someone other than Plaintiff a fee for the services it provides to that party.

The Court should dismiss Plaintiff's claims in their entirety.

## II.   FACTUAL BACKGROUND

Smart Tuition serves as a tuition management system and school tuition software platform for private schools in California and other states across the country.[1]  (First Am. Compl. ("FAC"), ¶¶ 1, 22, ECF No. 27.)  Smart Tuition

---

[1] Defendant Blackbaud, Inc. acquired Smart Tuition in 2015.  (FAC ¶ 1.) For the purposes of this motion and consistency with Plaintiff's complaint, all

provides student billing and payment processing platforms for private schools.  (*Id.* ¶ 1.)  In addition to providing payment processing services, Smart Tuition also offers a follow-up service to its participant schools if a parent does not pay tuition on time.  (Decl. of Marissa Torsiello in Supp. of Def. Blackbaud Inc.'s Mot. to Dismiss ("Torsiello Decl.")[2], Ex. D ("Enrollment Form") at 2, ECF No. 24-5 ("In the event that your account become delinquent, Smart Tuition may provide your school a follow up service[.]".)  The follow-up service may include following-up with the parent via mail, telephone, or email.  (*Id.*)  The school may choose to pass on the fee for the follow-up service ("Follow-Up Service Fee") to the parent.  (*Id.*)[3]  If the school does so, the Follow-Up Service Fee may be assessed in addition to any late fee assessed by the school.  (*Id.*)

Plaintiff's account with Smart Tuition is governed by an "Enrollment Form," but Plaintiff fails to attach this agreement, or any other agreement, to the operative Complaint.[4]  (*See* FAC ¶¶ 3,7.)  The terms and conditions governing the use of

---

references to Smart Tuition and Blackbaud will refer to the Defendant, Blackbaud, Inc.

[2] The Declaration of Marissa Torsiello was submitted with Defendant's first Motion to Dismiss filed on June 29, 2018, ECF No. 24-1.

[3] In an attempt to cure the standing problems identified in Blackbaud's original motion to dismiss, Plaintiff now specifically alleges that the Follow-Up Service Fee is not charged to the school, but charged directly to parents.  (*Compare* Complaint ("Compl.) ¶ 3, ECF. No. 1 *with* FAC ¶ 4.)  As discussed *infra* at V.B.1., this allegation is properly disregarded because it conflicts with the underlying contract.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

[4] A court may consider documents that plaintiffs necessarily rely upon in their complaint when ruling on a motion to dismiss to prevent the plaintiff from surviving dismissal by deliberately omitting references to documents upon which their claims are based.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Because Plaintiff's allegations necessarily rely on the terms in Smart Tuition's Enrollment

1  Smart Tuition's platform are set out in the Enrollment Form, which are now all

2  completed online.  (Torsiello Decl. ¶ 8, Ex. D.)

3        The Enrollment Form explains that both a late fee and the Follow-Up Service

4  Fee may be assessed by the school if a parent is late paying their tuition:

5  • **Late Fees:**  Any payment that is not received by Smart Tuition by
   your due date is considered late and may receive a late fee.  In the
6  event that your account becomes delinquent, **Smart Tuition may
   provide your school a follow-up service** which will contact you via
7  mail, telephone, or e-mail.  Your account may be charged a fee as a
   result of this service.  This fee is in addition to any late fees **charged
8  by your school**.

9  (Torsiello Decl., Ex. D at 2 (emphasis added).)

10       The Enrollment Form also conveys that Plaintiff's obligation to make timely

11  tuition payments is one that runs to his children's school.  It provides:  "Smart

12  Tuition receives, processes, and deposits your payments into [the] **school's bank**

13  **account**."  (Torsiello Decl., Ex. D at 1 (emphasis added).)  That Plaintiff's

14  obligations are to the school—not Smart Tuition—is confirmed by other provisions

15  in the Enrollment Form:

16  • **Late Enrollment:** If Smart Tuition does not receive your enrollment
   form on time, your first payment date will be moved forward. **Your
17  school may require** you to catch up any missed payments on your
   first due date or may establish a plan with a smaller number of larger
18  payments.

19  • **Refunds:** Smart Tuition does not issue cash refunds. Overpayments
   will be carried on your account and credited to future tuition payments.
20  All reimbursements or refunds must be arranged with **your school.**

21  (*Id.* (emphasis added).)  The Enrollment Form is only 11 short paragraphs (usually

22  one to two sentences) long.  (*See generally id.*)

23       Smart Tuition's invoices sent to parents on behalf of the schools reiterate

24  these terms and further remind Plaintiff about the potential for late fees and Follow-

25  Up Service Fees:

26  

27  Form, the Court should consider the Enrollment Form.  Plaintiff's invoice is likewise
   incorporated by reference.  (FAC ¶¶ 7, 8, 10, 60, 68.)
28

4

- Smart Tuition receives, processes, and deposits your payments into **your school's bank account**.

- **Follow-up Service**:  Any payment that is not received by Smart Tuition by your due date is considered late and may receive a late fee.  In the event that your account becomes delinquent, **Smart Tuition may provide your school a follow-up service** where Smart may contact you via mail, telephone, or e-mail.  Your account may be charged an additional fee as a result of this service.  This fee is in addition to any late fees **charged by your school.**

(Torsiello Decl., Ex. E at 2, ECF No. 24-6 (emphasis added).)

**Plaintiff's experience.**  Plaintiff first enrolled in Smart Tuition's payment processing services to make tuition payments to his children's school in March 2008.  (FAC ¶ 16; Torsiello Decl., ¶ 3, Exs. A & B, ECF Nos. 24-2 & 24-3.)  Plaintiff agreed to the terms of the Enrollment Form, which authorized his school to re-enroll him in Smart Tuition's payment program automatically for subsequent school years, and he has been enrolled each year since 2008.  (Torsiello Decl., ¶¶ 3, 5, 7 and Exs. A, C, ECF No. 24-4, & D; *see also* FAC ¶ 16.)[5]  Smart Tuition's Terms and Conditions have not materially changed while Plaintiff has been enrolled.  (*Compare* Torsiello Decl. Ex. B *with* Torsiello Decl. Ex. D.)[6]

The Amended Complaint alleges and the Enrollment Form provides that Smart Tuition processes and transmits the tuition payments (including any additional fees) into the school's bank account.  (*See* Torsiello Decl., Ex. D; FAC ¶ 2.)  Plaintiff does not allege that he is a party to the agreement between Smart

---

[5] Smart Tuition's enrollment forms have a one-year term.  The longest statute of limitations period for any of Plaintiff's claims is four years.  *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1401-02 (1991) (four-year statute of limitations period to section 1671 claims for liquidated damages); Cal. Bus. & Prof. Code § 17208 (four-year statute of limitations period for a UCL claim); Cal. Civ. Code § 1783 (three-year statute of limitations period for a CLRA claim).  As such, the contracts relevant to this action are for the school years starting in 2013-2014 to the present.

[6] As the terms have not materially changed since 2008, and the provisions relied on in this Motion have not changed since 2013 (Torsiello Decl. ¶ 9), Smart Tuition refers and cites to the current Enrollment Form throughout the Motion.

5

1    Tuition and his children's school.  (*Id.*)

2         Over the past four years, Plaintiff alleges that he was charged $50 for each

3    past-due payment.  (*Id.* ¶ 6.)  Plaintiff does not challenge the portion of the $50 that

4    is the late fee assessed by his school.  (*Id.* ¶¶ 6, 13-15.)  Instead, he challenges only

5    the portion of the fee that corresponds to the Follow-Up Service Fee.  (*Id.*)  Plaintiff

6    also alleges that Smart Tuition's follow-up emails "do not contain the disclosure

7    required by California and Federal [debt collection] law."  (*Id.* ¶ 5.)

8         Plaintiff's Amended Complaint rests on two primary theories:  (1) that the

9    Follow-Up Service Fee is not a "reasonable measure or approximation of [Smart

10   Tuition's] damages" and thus an impermissible liquidated damages provision, and

11   (2) that Smart Tuition is a "debt collector" and its follow-up email is an attempt to

12   collect a "debt."  (FAC ¶ 1.)  Plaintiff's claims—for violations of Civil Code

13   section 1671, the CLRA, the UCL, the Fair Debt Collections Practices Act

14   ("FDCPA"), and the California Rosenthal Fair Debt Collection Practices Act (the

15   "Rosenthal Act")—are all based on one or both of these flawed theories.  (*See* FAC

16   ¶¶ 14, 43, 50, 56, 68, 77, 82.)

17   **III.   PROCEDURAL HISTORY**

18        Plaintiff filed his original complaint on April 26, 2018.  (Compl. at 1.)  The

19   complaint asserted claims under section 1671, the CLRA, and the UCL.  (*See id.*

20   ¶ 7.)  Plaintiff's UCL and CLRA claims both hinged on his allegation that the "Late

21   Fees" charged by Smart Tuition under a "Service Agreement" were improper

22   liquidated damages under section 1671.  (*Id.* ¶¶ 40, 48, 58)  He did not attach the

23   alleged "Service Agreement."  On June 29, 2018, Smart Tuition filed a motion to

24   dismiss, along with the Enrollment Form that governs Plaintiff's use of Smart

25   Tuition's tuition payment services.  (Mot. to Dismiss ("MTD"), ECF No. 24;

26   Torsiello Decl., ¶ 7, Ex. D.)  The Enrollment Form demonstrated that the fees he

27   challenges are not "late fees" charged by Smart Tuition, but are fees *passed on to*

28   *him by his school* for Smart Tuition's follow-up service that it provides to the

6

1   school.  (MTD at 2-5, 6-9.)

2       Instead of responding to the motion to dismiss, Plaintiff filed an Amended

3   Complaint on July 20, 2018, which asserted the same claims plus claims under the

4   FDCPA and the Rosenthal Act.  (*See generally* FAC.)  The Amended Complaint

5   does not correct the inaccurate allegations that are directly contradicted by the

6   actual Enrollment Form.  (*See, e.g. id.* ¶ 4 (alleging Smart Tuition charges parents

7   Follow-Up Service Fees directly), ¶ 7 (alleging Smart Tuition imposes both the

8   Late Fee and the Follow-Up Service Fee), ¶ 8 (alleging Smart Tuition determines

9   the Late Fees and Follow-Up Service Fees and charges them to all class members

10  who pay late), ¶ 14 (alleging that the Follow-Up Service Fees constitute unlawful

11  penalties under section 1671 when the Enrollment Form provides that Smart

12  Tuition processes payments *on behalf of* his school).)

13      Although Plaintiff ignores these provisions in the Enrollment Form, he has

14  now added allegations regarding the scroll format of the Enrollment Form even

15  though he does not allege that he enrolled online or that he even read the Form.

16  Those conclusory allegations cannot save his defective complaint, which fails for

17  the reasons discussed below.

18  **IV.   LEGAL STANDARD**

19      To survive a motion to dismiss, a complaint must contain sufficient factual

20  matter, accepted as true, to "state a claim to relief that is plausible on its face."

21  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

22  550 U.S. 544, 570 (2007)).  A court must accept all factual allegations pled in the

23  Complaint as true, *Cahill v. Liberty Mutual Insurance Co*., 80 F.3d 336, 337-38

24  (9th Cir. 1996), but need not accept unreasonable inferences or legal conclusions

25  cast in the form of factual allegations.  *See Iqbal*, 556 U.S. at 681.  Determining

26  whether a complaint states a plausible claim for relief is "a context-specific task

27  that requires the reviewing court to draw on its judicial experience and common

28  sense."  *Id*. at 679.  To determine whether a complaint states a claim, a court can

7

1  consider the contents of the complaint, exhibits to the complaint, documents

2  incorporated into the complaint by reference, and matters properly subject to

3  judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23

4  (2007); *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

5  **V.    ARGUMENT**

6          **A.    Plaintiff's Section 1671 Claim Fails Because Smart Tuition's
              Follow-Up Service Fee is Not Triggered By Plaintiff's Breach of A
7              Contract with Smart Tuition.**

8          California Civil Code section 1671 governs the validity of liquidated

9  damages provisions, which are provisions in a contract that specify a fixed amount

10 of damages for a breach of that contract.[7]  Cal. Civ. Code § 1671.  For section 1671

11 to apply, however, the challenged provision must actually constitute liquidated

12 damages.  *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (citation

13 omitted).  California courts define liquidated damages as "an amount of

14 compensation to be paid in the event of a breach of contract, the sum of which is

15 fixed and certain by agreement."  *Id.*; *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191,

16 1196 (N.D. Cal. 2009).  "[T]o constitute a liquidated damages clause the conduct

17 triggering the payment must in some manner breach the contract."  *Morris v.

18 Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1315 (2005).  Whether a

19 provision is a liquidated damages provision is a question of law for the court to

20 decide.  *Ruwe*, 613 F. Supp. 2d at 1196.

21         Here, Plaintiff cannot state a claim under section 1671 because the Follow-

22 Up Service Fee is not triggered by Plaintiff's breach of a contract between Plaintiff

23 and Smart Tuition—Plaintiff has no obligation to Smart Tuition to make his school

24 tuition payments on time.  Plaintiff does not allege that he has any such obligation.

25 Instead, he acknowledges that Smart Tuition provides payment processing services

26

27         [7] Subsequent undesignated section references are to the California Civil
   Code.

28

8

1   *on behalf of* his children's private school.  (FAC ¶¶ 1, 2.)  Plaintiff's Enrollment

2   Form and invoices all confirm that Plaintiff's obligation to pay is to his children's

3   school and that Smart Tuition is the payment processor.  (*E.g.*, Torsiello Decl., Exs.

4   D & E.)  Indeed, the Enrollment Form and invoices all inform parents that Smart

5   Tuition processes the payments and deposits the funds into the school's bank

6   account.  (*Id.*)  Other parts of the Enrollment Form further confirm that Plaintiff's

7   obligation to make his children's tuition payments is to the school, not Smart

8   Tuition:

9         • **Late Enrollment:** If Smart Tuition does not receive your enrollment
10           form on time, your first payment date will be moved forward. **Your
            school may require** you to catch up any missed payments on your
11           first due date or may establish a plan with a smaller number of larger
            payments.

12         • **Refunds:** Smart Tuition does not issue cash refunds. Overpayments
            will be carried on your account and credited to future tuition payments.
13           All reimbursements or refunds must be arranged with **your school.**

14   (*Id.*, Ex. D at 1 (emphasis added).)

15        In fact, the Smart Tuition Enrollment Form and invoices note that the *school*

16   may charge a late fee if payment is not received by the school's set deadline.  (*Id.*;

17   Ex. D at 2, Ex. E at 2 ("A late fee may be assessed **by your school** if balances due

18   are not paid and posted by your established due date." (emphasis added)).)  Because

19   Plaintiff's obligation to make timely payments is to his children's school and not

20   Smart Tuition, Plaintiff has not identified any breach of an agreement with Smart

21   Tuition that triggers the Follow-Up Service Fee, which precludes its classification

22   as liquidated damages.  *See Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 932

23   (1985) (dismissing section 1671(d) claim because the plaintiff failed to identify any

24   breach of the agreement between plaintiff and defendant).

25        Plaintiff has not even identified a provision that obligates him to pay *Smart*

26   *Tuition*—as opposed to his children's school—the Follow-Up Service Fee.  The

27   Follow-Up Service provision states both that "Smart Tuition may provide *your*

28   *school* a follow-up service" and that "*[y]our account may* be charged a fee as a

9

1   result of this service." (Torsiello Decl., Ex. D (emphasis added).) As explained in

2   Smart Tuition's Enrollment Form and restated in its invoices, Smart Tuition only

3   "receives, process, and deposits [Plaintiff's] payments into [his children's] school's

4   bank account." (*Id.*, Exs. D at 1 & E at 2.)

5        The fact that Plaintiff's payment is made to the school and not to *Smart*

6   *Tuition* for the follow-up service is further confirmed by the lack of specified

7   amounts for the follow-up service and the school's late fee in the invoices sent to

8   Plaintiff. (*See* Torsiello Decl., Ex. E.) If Plaintiff misses his payment due date, the

9   invoices provide one lump sum, which includes principal, the school's late fee, and

10  the school's Follow-Up Service Fee—there is no breakout to Smart Tuition for its

11  Follow-Up Service Fee versus the total amount due to his school. (*Id.*) Thus,

12  because Plaintiff cannot identify a breached obligation to Smart Tuition or an

13  obligation to pay Smart Tuition the challenged fee—Plaintiff fails to identify a

14  liquidated damages provision, so he cannot pursue a claim for violation of

15  section 1671.[8]

16        **B.    The Deficiencies in Plaintiff's Section 1671 Claim Demonstrate
                    That Plaintiff Lacks Standing for All of His Claims.**

17

18             **1.    Plaintiff Cannot Create Standing By Adding Allegations
                          that are Contradicted by the Underlying Documents.**

19        As detailed *infra* and in Smart Tuition's Motion to Dismiss the original

20  _____

21        [8] Even if Plaintiff could overcome this hurdle, he errs in alleging that
    subsection (d) of section 1671 applies. That subsection applies only where the

22  liquidated damages are sought to be recovered from "[a] party to a contract for the
    retail purchase, or rental, by such party of personal property or services, primarily

23  for the party's personal, family, or household purposes" or a party to a contract for
    lease of a dwelling. Cal. Civ. Code § 1671(c). Here, the fee arises from a contract

24  between Smart Tuition and Plaintiff's children's school, which is not a contract
    "primarily for [either] party's personal, family, or household purposes." *Id.*,

25  § 1671(c)(1); *see Beeks v. ALS Lien Servs.*, No. CV 12-2411 FMO (PJWx), 2014
    WL 7785745, at *12-13 (C.D. Cal. Feb. 18, 2014) (finding a contract between a

26  collection agency and homeowners' association was subject to subsection (b)).
    Moreover, Plaintiff fails to allege any facts that could support a claim under either

27  subsection (b) or (d).

28

sf-3929981

Complaint (MTD at 9-11), Plaintiff lacks standing for all of his claims based on the Follow-Up Service Fee, because he is not a party to the contract between Smart Tuition and Our Lady of the Assumption, which is the contract that provides for the Follow-Up Service Fee.  (*See infra* Section V.B.2.)  Plaintiff's Amended Complaint attempts to cure this lack of standing by alleging that Smart Tuition charges parents "Follow-Up [Service] Fees directly" and that "the respective schools do not pass on any amount of the Follow-Up [Service] Fee to the parents."  (FAC ¶ 4.)

But Plaintiff cannot create standing or state a claim by alleging facts that are contradicted by the documents upon which he bases his claims.  *Steckman*, 143 F.3d at 1295-96 (The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (affirming dismissal of plaintiff's claim where document attached to the complaint contained factual allegations that fatally undermined his claim); *see also Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (dismissing complaint with prejudice where article referenced in the complaint contradicted the allegations in the complaint).

Here, the Enrollment Form and Plaintiff's invoices explicitly provide "Smart Tuition receives, processes, and deposits your payments into *your school's* bank account."  (Torsiello Decl., Exs. B at 2, D at 1, E at 2 (emphasis added).)  The fact that the Follow-Up Service Fees are passed on to the parent by the school is confirmed by several provisions and Plaintiff's own allegations.  *First*, the aforementioned provision demonstrates that Smart Tuition is processing payments on behalf of Plaintiff's school, not directly collecting the fees it charges its participant schools from parents.  Plaintiff alleges that his school's late fee is $10, but is being charged $50 when he does not make his payments on time.  (FAC ¶ 6.)  This demonstrates that Our Lady of Assumption is passing on the Follow-Up Service Fee to Plaintiff.  (*Id.*)  *Second*, the fact that the actual late fees and Follow-

11

1   Up Service Fees are lumped together on Plaintiff's statements further confirms that

2   school is passing on the Follow-Up Service Fee.  (*See id.*)  There is simply no

3   reason to separate out the two fees because both are being charged to the parent *by*

4   *the school*.  Thus, because Plaintiff's allegations that (1) Smart Tuition charges

5   parents directly and (2) the school does not pass the Follow-Up Service Fee on to

6   parents are contradicted by the underlying documents, both are properly

7   disregarded.  *Sprewell*, 266 F.3d at 988.

8                   **2.      Plaintiff Lacks Standing to Challenge the Follow-Up Service**
               **Fee Directly Under Section 1671.**

9

10        Plaintiff cannot challenge the fee Smart Tuition charges to the school

11   because he is not a party to or a third-party beneficiary of the contract between

12   Smart Tuition and the school.  *See Schulz v. Cisco Webex, LLC,* No. 13-cv-04987-

13   BLF, 2014 WL 2115168, at *3-5 (N.D. Cal. May 20, 2014) (granting motion to

14   dismiss plaintiff's breach of contract, negligent performance of contractual duties,

15   and unjust enrichment claims for lack of standing on ground that plaintiff had not

16   shown that she was either a party to or a third-party beneficiary of the contract at

17   issue); *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D.

18   Cal. 2010) ("A third party who is only incidentally benefited by a contract does not

19   have standing to enforce the contract.").

20        As discussed *supra,* Plaintiff's agreement with Smart Tuition does not

21   obligate Plaintiff to pay *Smart Tuition* anything—it merely informs Plaintiff that his

22   children's school may pass on fees for Smart Tuition's follow-up services if he is

23   delinquent on tuition payments.  (*See supra* at Section V.A.)  The actual contract

24   that provides for the assessment of the fee is the contract between Smart Tuition

25   and Plaintiff's children's school.  Plaintiff does not claim to be a party to that

26   contract—nor could he.  (*See* FAC ¶ 2.)  Thus, he can only challenge the terms of

27   that contract if he is a third-party beneficiary of the contract, which he is not.

28   *Beeks*, 2014 WL 7785745, at *13.

1    *Beeks v. ALS Lien Services* is instructive.  *Id.*  In *Beeks*, the plaintiff

2    challenged as void under section 1671 a collection fee charged by a collection

3    agency to her homeowner's association, which then passed the fee on to her.  *Id.* at

4    \*12.  Like here, even though the plaintiff was not a party to the agreement between

5    the collection agency and the association, she alleged that the flat fee the collection

6    agency charged was a liquidated damages provision and thus unenforceable.  *Id.*

7    Plaintiff argued that she had standing to challenge the fee because as the "target" of

8    the collection efforts she was a third-party beneficiary of the contract.  *Id.* at \*13.

9    The court rejected her argument, finding that "this definition would substantially

10   expand the notion of what a 'beneficiary' is," and dismissed her section 1671 claim

11   for lack of standing.  *Id.*

12     The Court should reach the same result here.  As in *Beeks*, Smart Tuition has

13   a contractual agreement under which it may provide a service to Plaintiff's

14   children's school if requested and charges the school a fee for that service.  *See id.*

15   at \*2.  (*See supra* at Sections II & V.A.)  Plaintiff, as the "target" of that activity,

16   cannot be anything more than an incidental beneficiary of the contract between

17   Smart Tuition and his children's school.  *Id.* at \*13; *see also Berryman v. Merit*

18   *Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1553 (2007) (finding plaintiffs did not

19   have standing to challenge a fee assessed pursuant to a contract to which they were

20   not a party, even though the fee was subsequently passed on to them).  Thus,

21   because Plaintiff is neither a party to nor a third-party beneficiary of the contract

22   between Smart Tuition and his children's school, Plaintiff lacks standing to assert

23   any claims under section 1671.

24      **3.**  **Because Plaintiff Lacks Standing To Challenge the Follow-**
     **Up Service Fee Directly, His CLRA and UCL Claims Also**
25           **Fail.**

26     The same standing problem defeats Plaintiff's other claims based on the

27   Follow-Up Service Fee as well.  California law is clear:  "plaintiffs cannot use the

28   contracts [that they lack standing to enforce] to bootstrap liability under other

                  13

1  theories, such as the UCL, CLRA or common law theories such as negligence.

2  Permitting such recovery would completely destroy the principle that a third party

3  cannot sue on a contract to which he or she is merely an incidental beneficiary."

4  *Berryman*, 152 Cal. App. 4th at 1553; *Cabrera v. Countrywide Fin.*, No. 11-4869

5  SI, 2012 WL 5372116, at *8 (N.D. Cal. Oct. 30, 2012) (dismissing claims for

6  violations of unfair competition law and other claims for lack of standing because

7  plaintiff was not a party to the contract); *Cleveland v. Deutsche Bank Nat'l Trust

8  Co.*, No. 08cv0802 JM(NLS), 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009)

9  (same).

10  　　　Here, Plaintiff's CLRA and UCL "unfair" claims are based wholly on his

11  challenge to Smart Tuition's Follow-Up Service Fee.  (*See* FAC ¶¶ 68-73.)

12  Plaintiff also brings a UCL "unlawful" claim based on his challenged to the

13  Follow-Up Service Fee.  But Plaintiff lacks standing to challenge the Follow-Up

14  Service Fees directly, so he cannot attack them through the UCL or CLRA either.

15  **C.　　Plaintiff Cannot State a Claim Under Either the FDCPA or the
16  　　　　Rosenthal Act.**

17  　　　Plaintiff's new debt collection claims also lack merit, because neither the

18  federal nor state statute applies to Smart Tuition or its conduct.  Because Plaintiff

19  cannot show that Smart Tuition is a "debt collector" under the FDCPA or that the

20  Fees are "debts" under the Rosenthal Act, both claims should be dismissed.

21  **　　　1.　　Plaintiff's FDCPA Claims Fail Because Smart Tuition is Not
22  　　　　　　a "Debt Collector."**

23  　　　To establish a prima facie violation of the FDCPA, a plaintiff must plead and

24  prove four elements: (1) the plaintiff is any natural person who is harmed by

25  violations of the FDCPA, or is a "consumer"; (2) the "debt" arises out of a

26  transaction entered into primarily for personal, family, or household purposes; (3)

27  the defendant collecting the debt is a "debt collector" within the meaning of 15

28  U.S.C. § 1692a(6); and (4) the defendant has violated, by act or omission, a

14

provision of the FDCPA. *Leasure v. Willmark Cmtys., Inc.*, No. 11-cv-00443 BEN (DHB), 2013 WL 6097944, at *2 (S.D. Cal. Mar. 14, 2013).

The FDCPA thus applies only to "debt collectors." It specifically excludes from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt[9] *which was not in default at the time it was obtained by such person*." *De Dios v. Int'l Realty & RC Invs.*, 641 F.3d 1071, 1073-74 (9th Cir. 2011) (emphasis added, quoting 15 U.S.C. § 1692a(6)(F)(iii) ("F(iii) Exception")). Smart Tuition falls squarely within that exception.

In *De Dios*, the Ninth Circuit recognized that the F(iii) exception applies to entities that obtained the right to collect the debt—not just entities that purchased the debt—prior to default. *See* 641 F.3d at 1076.[10]  In *De Dios*, the plaintiff alleged that a residential property manager violated the FDCPA when it sent plaintiff a collection letter seeking unpaid rent. *Id.* at 1073.  In affirming the district court's grant of summary judgment in favor of defendant, the Court concluded that the property manager was not a debt collector because it acquired the right to collect the debt before the renter defaulted on his payments. *Id.*; *see also Franceschi v.*

---

[9] Because Smart Tuition is not a debt collector under the FDCPA, Smart Tuition presumes for the purpose of this motion that Plaintiff's tuition payments could be considered a "debt" under the federal statute.  If the FDCPA claim is permitted to proceed, Smart Tuition reserves the right to fully brief this issue upon an expanded record.

[10] The legislative history of the FDCPA likewise confirms that the F(iii) Exception applies to entities that obtained the right to collect the debt prior to default, not just entities that purchased the debt prior to default.  *See* S. Rep. No. 95-382, at 3-4 (1997), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1698 (debt collector does not include "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing").  Fed. Trade Comm'n, Staff Commentary on the Fair Debt Collection Practices Act § 803, 53 Fed. Reg. 50097, 50103 (Dec. 13, 1988) (exemption in section 1692a(6)(F)(iii) was intended to apply to mortgage companies and other parties "whose business is servicing *current* accounts") (emphasis added).

15

*Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998) (property management agent obtaining right to collect on landlord's behalf before the rent became due was not collecting a debt in default when it sent a demand letter for the remaining, disputed portion of overdue rent).  So too here.

Plaintiff concedes that Smart Tuition was retained to collect tuition payments at the beginning of a school term before Plaintiff failed to make timely payments and before any Follow-Up Service Fees or Late Fees were assessed.  (*See* FAC ¶¶ 22-23; Torsiello Decl., Ex. B at 2.)  Thus, Smart Tuition obtained the right to collect Plaintiff's tuition payments prior to any default and is not a debt collector under the FDCPA.  *De Dios*, 641 F.3d at 1076; *see also Hinrichsen v. Bank of Am., N.A.*, No. 17-cv-0219 DMS (RBB), 2018 U.S. Dist. LEXIS 119367, at *11 (S.D. Cal. July 17, 2018) ("[I]f a loan servicer acquired servicing rights before the debt went into default, it is exempt [from the definition of] debt collector." (citing *Rich v. Bank of Am., N.A.*, 666 F. App'x 635, 639 (9th Cir. 2016)).[11]  Plaintiff's FDCPA claims must be dismissed.

### 2. The Rosenthal Act Does Not Apply Because Plaintiff's Tuition Payments, Late Fees, and Follow-Up Service Fees are Not "Debts."

The Rosenthal Act does not apply either because it applies only to debt for

---

[11] *See also Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1211 (N.D. Cal. 2012) ("Because Aurora became servicer to [plaintiff's] loan before he defaulted, Aurora cannot be a "debt collector" for purposes of the FDCPA."); *Distor v. US Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, at *5 (N.D. Cal. Oct. 22, 2009) ("Defendant [] was the loan servicer before the mortgage went into default, and the FDCPA excludes persons attempting to collect a debt that was not in default at the time it was obtained."); *Paladino v. Cal. Bus. Bureau*, No. 14-CV-2364 W (MDD), 2015 WL 12532474, at *4 (S.D. Cal. Nov. 17, 2015) (Defendant who contracted with hospital to handle patient billing not a "debt collector" for purposes of FDCPA because the debt was current, and therefore not in default, when obtained); *Leasure*, 2013 WL 6097944, at *3 (defendant property manager exempt from the meaning of "debt collector" under FDCPA where it was "provided with authority to collect rent and expenses when they were not yet in default on behalf of [property owner]").

16

"services or money [that] is *acquired on credit*."  Cal. Civ. Code §§ 1788.1, 1788.2(e) & (f) (emphasis added); *Abels v. JBC Legal Grp*, 428 F. Supp. 2d 1023, 1026 (N.D. Cal. 2005) ("The California FDCPA [i.e. the Rosenthal Act] contains a 'credit requirement.'").[12]  The Rosenthal Act does not define "credit," but the plain and ordinary meaning of "credit" is the right to defer payment. *Davidson v. Seterus*, 21 Cal. App. 5th 283, 296 (2018) ("[T]he 'ordinary and usual meaning' of the phrase 'on credit' can be stated as obtaining something of value without immediate payment *on the promise to make a payment or payments in the future.*" (emphasis added, citation omitted)).  Here, because Plaintiff did not have a right to defer payment on his tuition payments, the late fees, or the Follow-Up Service Fees, they are not "debts" under the statute and the Rosenthal Act does not apply.

This result is confirmed by several analogous decisions in the residential rent collection context.  *See Phillips v. Archstone Simi Valley LLC*, No. CV 15-5559-DMG (PLAx), 2016 WL 7444550, at *5 (C.D. Cal. Dec. 15, 2016) (finding that typical rental transactions do not involve an extension of credit); *Leasure*, 2013 WL 6097944, at *4 (rent payments are not "consumer credit transaction[s]"); *Yatooma v. OP Prop. Mgmt. LP*, 2:17-cv-02645 ODW, 2017 WL 3120259 (C.D. Cal. July 20, 2017) (same).  For example, in *Phillips*, the plaintiff alleged that his landlord violated the Rosenthal Act in seeking to collect past-due rent and late fees.  2016 WL 7444550, at *3.  Plaintiff argued that because he acquired something— continued possession of the premises without paying for it—his monthly rent was a credit transaction.  *Id*. at *4.  The court disagreed, finding that the plaintiff only

---

[12] The statute defines "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a *consumer credit transaction*."  Cal. Civ. Code § 1788.2(f) (emphasis added).  A "consumer credit transaction," in turn, is defined as "a transaction between a natural person and another person in which property, services or money is *acquired on credit* by that natural person from such other person primarily for personal, family, or household purposes."  *Id*., § 1788.2(e) (emphasis added).

17

1    acquired the right to occupy the premises because he paid for that right in advance.

2    *Id*. at *5.  Nothing in the lease gave him a right to defer payment—it was only

3    plaintiff's unilateral refusal to leave or pay that gave him something without

4    payment.  *Id*.  This was fatal to plaintiff's claim, because a credit transaction cannot

5    occur without consent.  *Id*.  ("[C]onsent is essential to the consumer credit

6    transaction." (citing *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004))).  The

7    lack of consent was also fatal to the plaintiff's contention that his late fees

8    constituted separate consumer credit transactions.  *Id*.

9         The same reasoning warrants dismissal of Plaintiff's claims here.  Similar to

10   the monthly rent payments under a lease, Plaintiff was obligated to make monthly

11   tuition payments for his children's attendance at Our Lady of the Assumption.

12   (Torsiello Decl., Ex. B at 1.)  Plaintiff does not allege (nor could he) that he had a

13   right to defer his tuition payments.  *See Durham v. Cont'l Cent. Credit*,

14   No. 07cv1763 BTM(WMc), 2009 WL 3416114, at *7 (S.D. Cal. Oct. 20, 2009)

15   (selecting a quarterly payment plan did not create an extension of credit).  Thus,

16   Plaintiff cannot retroactively create a credit transaction by failing to make timely

17   tuition payments.  *Phillips*, 2016 WL 7444550, at *5 ("a credit transaction is not

18   retroactively created by virtue of the consumer's . . . later failure to pay"); *Yatooma*,

19   2017 WL 3120259, at *3 ("Plaintiff should not be able to unilaterally manufacture a

20   "'consumer credit transaction,' where . . . the underlying contract mutually agreed

21   to by the parties does not involve any extension of credit.").

22        Neither does the assessment of Follow-Up Service Fees and the late fees

23   somehow convert Plaintiff's failure to pay into a consumer credit transaction.

24   *Phillips*, 2016 WL 7444550, at *6 (rejecting that late fees could constitute a

25   consumer credit transaction "[g]iven the significant weight of authority holding that

26   late fees are not actionable under the Rosenthal Act"); *Udo v. Kelkris Assocs., Inc.*,

27   No. 12-CV-2022- IEG (NLS), 2012 WL 5985663, at *2 (S.D. Cal. Nov. 29, 2012)

28   (dismissing Rosenthal Act claim based on finding that the alleged debt arose from

18

1    unpaid fees, none of which involved a credit transaction).  Thus, because none of

2    the money owed arose from a consumer credit transaction, the Rosenthal Act does

3    not apply, and Plaintiff's claims should be dismissed.

4    **D.**    **Plaintiff's CLRA Claim Also Fails Because Smart Tuition's**

5    **Follow-Up Service Fee Is Neither Prohibited Nor Unconscionable.**

6    Even if Plaintiff had standing to pursue his CLRA claim, he has not pled and

7    cannot plead a claim that the Follow-Up Service Fee is "prohibited" (section

8    1770(a)(14)) or "unconscionable" (section 1770(a)(19)).

9    **1.**    **The CLRA Does Not Apply.**

10    First, the CLRA does not apply here as the challenged conduct arises out of a

11    contract between a company and a private school, not a consumer.  *See* Cal. Civ.

12    Code § 1761(e) (defining transactions as an agreement between a *consumer* and any

13    other person); *id.*, § 1770(a) (limiting application to transactions); *see also*

14    *Berryman*, 152 Cal. App. at 1558 (dismissing CLRA claim because the challenged

15    transaction did not involve a consumer).

16    **2.**    **Plaintiff Fails to Plead a Predicate Violation.**

17    Second, Plaintiff fails to identify the predicate violation of law that is

18    required to pursue a claim under section 1770(a)(14).  Plaintiff's only statutory

19    basis for alleging that the service fee is prohibited is section 1671(d).  (FAC ¶ 50.)

20    As discussed above, Plaintiff may not pursue a claim under section 1671 and even

21    if he could, section 1671(d) does not apply here.  So Plaintiff fails to allege any way

22    in which the Follow-Up Service Fee Provision is "prohibited by law," the only

23    basis Plaintiff asserts for his section 1770(a)(14) claim.  (*Id.*)

24    As the California Court of Appeal explained in addressing the overarching

25    problem with similar CLRA and UCL claims, "[t]he implication . . . that a for-profit

26    business must have statutory or contractual authorization for providing a service to

27    a third party and charging a fee for that service, is fundamentally flawed.  Indeed, it

28    is up to plaintiffs to demonstrate why a statute or contract *prohibits* the [defendant]

19

1    from doing so." *Berryman*, 152 Cal. App. 4th at 1553.  Plaintiff has not done so
2    here.

3    ### 3.    The Follow-Up Service Fee is Not Unconscionable.

4         Third, Plaintiff fails to allege that the Follow-Up Service Fee is both
5    procedurally and substantively unconscionable.  *See Walter v. Hughes Commc'ns,*
6    *Inc.*, 682 F. Supp. 2d 1031, 1046 (N.D. Cal. 2010) (explaining that a claim of
7    unconscionability requires plaintiff to plead facts supporting both procedural and
8    substantive unconscionability and dismissing claim under section 1770(a)(19) for
9    failure to sufficiently plead substantive unconscionability).  Plaintiff fails to
10   sufficiently allege either.

11   ### a.    Plaintiff Does Not Allege Any Facts to Support
          Procedural Unconscionability.
12

13        Plaintiff's Amended Complaint attempts to buttress his prior allegation of
14   procedural unconscionability (that it is a contract of adhesion) by alleging that the
15   Follow-Up Service Fees are "hidden" in a scroll-through window, the amount of
16   the fees is not disclosed up front, and they are "disguised" as Late Fees.  (FAC
17   ¶ 60.)  None of these new allegations demonstrate procedural unconscionability.

18        Far from being "hidden" or "disguised," the fact that the "Late Fees"
19   imposed by *Plaintiff's school* may include the Follow-Up Service Fee charged to
20   the school by Smart Tuition is disclosed in the first few paragraphs of the
21   Enrollment Form and in every monthly invoice.  (Torsiello Decl., Exs. D at 1-2, E
22   at 2); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015) (finding
23   arbitration agreement contained on page 22 of 32 accessed through hyperlink and
24   requiring user to scroll does not create sufficient oppression or surprise to establish
25   procedural unconscionability in an adhesion contract).  Nor was there any
26   surprise—the total amount of fees that the *school* will charge Plaintiff if he is late
27   on his tuition payment is also included on each invoice.  (*See, e.g.*, Torsiello Decl.,
28   Ex. E at 1.)  Although Plaintiff alleges the failure to break out late fees and Follow

20

Up Fees, two fees assessed by his child's school in the event of a late payment, is unconscionable, he does not allege any reason why this would be the case.

### b. Plaintiff Does Not Allege Any Facts to Support Substantive Unconscionability Either.

Plaintiff also fails to allege any facts as to substantive unconscionability. To establish substantive unconscionability the contract terms must be "'so extreme,' 'gross overpricing,' and 'overly harsh' [as to] 'shock the conscience.'" *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 214-15 (1994); *accord Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001). This heightened standard serves a necessary function: "With a concept as nebulous as 'unconscionability,' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable." *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996).

The Amended Complaint contains only two conclusory allegations regarding substantive unconscionability: the Follow-Up Service Fee is "unreasonably favorable to [Smart Tuition]" and "ha[s] no relationship whatsoever to any damages incurred by Defendant." (*See* FAC ¶ 61.) This is not enough.

On the first assertion, "[a]llegations that the price exceeds cost or fair value, standing alone, do not state a cause of action" for unconscionability. *Morris*, 128 Cal. App. 4th at 1323. "Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis." *Id.* at 1322. Courts require allegations that the challenged fee is "grossly out of line with fees charged by other[s]," (*id.* at 1323) that the fees are inconsistent with or overly harsh as compared with service fees charged by other similarly-situated third-party service providers, or that the defendant incurred no costs in providing its services. *See Walter*, 682 F. Supp. 2d at 1046; *Morris*, 128 Cal. App. 4th at 1323 (same). Plaintiff has not alleged any

21

1    such facts.

2          Plaintiff's second allegation, that Smart Tuition's Follow-Up Service Fee has

3    no relationship to the "damages" incurred by Smart Tuition, fares no better.  As

4    discussed *supra*, the Follow-Up Service Fee is not a liquidated damages

5    provision—it is a fee for the "follow-up service [provided to the school] where

6    Smart may contact [parents] via mail, telephone, or e-mail."  (Torsiello Decl., Exs.

7    B at 2, D at 1, & E at 2.)  The California Court of Appeal has rejected similar

8    CLRA and UCL claims alleging that fees charged by for-profit third-party service

9    providers must correspond to the costs of providing the service.  *See Berryman*, 152

10   Cal. App. 4th at 1553 ("The implication, however, that a for-profit business must

11   have statutory or contractual authorization for providing a service to a third party

12   and charge a fee for that service, is fundamentally flawed.").  It is simply not the

13   law, nor should it be, that a for-profit entity has to tie the price of its services to its

14   actual costs.

15         Plaintiff has not come close to alleging the kind of facts required to pursue an

16   unconscionability claim.  *See Walter*, 682 F. Supp. 2d at 1047; *see also Morris*, 128

17   Cal. App. 4th at 1324 (affirming dismissal of unconscionable claim where plaintiff

18   failed to plead any facts that the termination fee was grossly out of line with fees

19   charged by other banks).

20   **E.    Plaintiff's UCL Claims Should Be Dismissed Because He Has Not Alleged a Predicate Violation to Support His Unlawful Claim or Sufficient Facts to Support His Conclusory Unfairness Claim.**

21

22         Plaintiff likewise fails to state a claim under either the "unlawful" or "unfair"

23   prong of the UCL.  Plaintiff's "unlawful" claim fails because he has not stated a

24   claim for any predicate violation, and his "unfair" claim fails because he has not

25   identified any injury or alleged that he could not have reasonably avoided the fee.

26   Thus, even if the Court reaches the substance of these claims, which it should not

27

28

1    (*see supra* at Section V.B.2), dismissal is still warranted.[13]

2                    **1.    Plaintiff Fails to State an "Unlawful" Claim.**

3          "Although the 'unlawful' prong of the UCL 'borrows' violations of other

4    laws and makes them independently actionable, Plaintiff's complaint must set forth

5    facts from which the Court can conclude a violation occurred." *Silcox v. State*

6    *Farm Mut. Auto. Ins. Co.*, No. 14cv2345 AJB (MDD), 2014 WL 7335741, at *5

7    (S.D. Cal. Dec. 22, 2014).  "Where [P]laintiff cannot state a claim under the

8    'borrowed' law, [he] cannot state a UCL claim either."  *Id.*  Plaintiff's "unlawful"

9    claim is predicated upon alleged violations of sections 1671(d) and 1670.5, the

10   CLRA, the FDCPA, and the Rosenthal Act. (FAC ¶¶ 56, 57, 58.)  For the reasons

11   explained above, Plaintiff has not identified any liquidated damages provision, so

12   section 1671 does not apply.  (*See supra* at Section V.A.)  Neither the FDCPA nor

13   the Rosenthal Act applies.  (*See supra* at Section V.C.)  Nor has he stated a claim

14   based on the CLRA.  (*See supra* at Section V.B & D.)

15         The only remaining alleged predicate violation is for section 1670.5, but it

16   fails too.  Section 1670.5 codifies the *defense* of unconscionability; it does not

17   create an affirmative cause of action.  *Dean Witter Reynolds, Inc. v. Superior Court*,

18   211 Cal. App. 3d 758, 764 (1989).  Accordingly, it cannot provide a basis for

19   Plaintiff's "unlawful" claim.[14]  Because Plaintiff has failed to identify and plead the

20   requisite predicate violation of law, his "unlawful" UCL claim must be dismissed.

21                    **2.    Plaintiff Fails to State an "Unfair" Claim.**

22         Plaintiff's "unfair" claim fares no better than his "unlawful" claim.  A

23   practice is "unfair" under the UCL if it results in substantial consumer injury, is not

24

25         [13] Plaintiff has not alleged any violation of the "fraudulent" prong of the
26   UCL.  *See* Cal. Bus. & Prof. Code § 17200.

27         [14] The Follow-Up Service Fee is also not unconscionable for all the reasons
     discussed *supra* at Section IV.C.
28

sf-3929981

1   outweighed by any countervailing benefits to consumers, and is not an injury the

2   consumers themselves could reasonably have avoided.  *Berryman*, 152 Cal.App.4th

3   at 1555-56.

4        Here, Plaintiff has failed to allege any injury caused by Smart Tuition.

5   Plaintiff breached his obligation to pay tuition to his child's school, and as a result

6   of that breach, Smart Tuition charged *the school* a Follow-Up Service Fee.  (*See*

7   FAC ¶ 3; Torsiello Decl., Exs. A & B.)  The school, which is not a party here, then

8   passed along that fee to Plaintiff.

9        Plaintiff's theory based on disclosure of the Follow-Up Service Fee fares no

10  better.  His allegation that Follow-Up Service Fees are "disguised" or "hidden" is

11  belied by the Enrollment Form and monthly invoices, which repeatedly inform

12  Plaintiff that the Late Fees *imposed by the school* may include the Follow-Up

13  Service Fee charged to the school.  (Torsiello Decl., Exs. D at 1-2, E at 2; *see supra*

14  at Section V.D.3.a.)  Plaintiff also does not explain what is unfair about grouping

15  the Follow-Up Service Fee and the "Late Fee" on his billing overview, when both

16  fees are owed to the school because of Plaintiff's late tuition payments.  (*See* FAC

17  ¶ 68.)

18       Plaintiff's allegations and the Enrollment Form confirm that there is a

19  countervailing benefit to the Follow-Up Service Fee—payment for services

20  rendered—and that he could have avoided the Follow-Up Service Fee by paying the

21  tuition promptly.  Plaintiff's bald assertions that the utility of the Follow-Up

22  Service Fee is "significantly outweighed by the gravity of the harm that they

23  impose on consumers" (*see* FAC  ¶ 70) and that the Follow-Up Service Fee is

24  "oppressive, unscrupulous or substantially injurious to consumers" (*id*.) fall short.

25  *See Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *7

26  (N.D. Cal. June 16, 2010) (finding similar allegations insufficient to state an

27  "unfair" claim).  The Court should dismiss Plaintiff's "unfair" claims.

28

## VI.   CONCLUSION

For the foregoing reasons, Defendant Blackbaud, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated:  August 24, 2018                  MORRISON & FOERSTER LLP

By:  /s/ James McGuire
                                                    James R. McGuire

                                                    Attorneys for Defendant

                                                    BLACKBAUD, INC.

sf-3929981