UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br><br>BLACKBAUD, INC.,<br>　　　　　Defendant. | Case No. CV 18-03549 AB (KSx)<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Before the Court is Defendant Blackbaud, Inc.'s ("Defendant") Motion to Dismiss First Amended Complaint ("Motion," Dkt. No. 32). Plaintiff William Brown ("Plaintiff") filed an opposition and Defendant filed a reply. The Court heard oral argument on October 19, 2018. For the following reasons, the Motion is **GRANTED**.

I.    **THE FIRST AMENDED COMPLAINT**

In this putative class action, Plaintiff challenges a fee that he was charged for paying his children's private school tuition late. The following are the relevant allegations from the First Amended Complaint ("FAC," Dkt. No. 27).

Defendant provides "Smart Tuition" tuition and payment services to private schools. FAC ¶ 2. Parents sign up for Smart Tuition online and make their periodic payments, and Smart Tuition then transmits the tuition payments to the respective school. *Id.* Pursuant to Smart Tuition's terms of service and agreements ("Enrollment

1.

Agreement"), Smart Tuition charges fixed late fees ("Late Fees") and follow-up fees ("Follow-Up Fees") when a tuition payment is not made on time. *Id.* ¶¶ 3, 25.

Plaintiff's three children attend a private school that requires him to use Smart Tuition to make tuition payments. *Id.* ¶ 16. Plaintiff complains that he has repeatedly incurred $10 Late Fees and $40 Follow-up Fees over the last four years. *Id.* ¶ 16. Since August 2015, Plaintiff has incurred these fees at least 28 times for a total of $1,400, consisting of $280 in Late Fees and $1,120 in Follow-Up Fees. *Id.*

Plaintiff challenges only the portion of these fees designated as Follow-Up Fees. He complains that while the $10 Late Fee is passed on to the school, the $40 Follow-Up Fee is wholly retained by Defendant. *Id.* ¶ 7. He contends that this is misleading because Defendant "purports to disburse collected Late Fees back to the school." *Id.* ¶ 4. He also complains that Defendant's billing statements are misleading because they show these two different fees lumped under the single name "Late Fees" rather than itemized as two fees. *Id.* ¶ 8. Plaintiff complains that Defendant discloses the Late Fee and the Follow-Up Fee in a single paragraph in its on-line Enrollment Agreement, and that a user has to scroll down in the window to see the disclosure. *Id.* ¶ 9-10. This paragraph reads:

> Late Fees: Any payment that is not received by Smart Tuition by your due date is considered late and may receive a late fee. In the [e]vent [sic] that your account becomes delinquent, Smart Tuition may provide your school a follow-up service which will contact you via mail, telephone, or e-mail. Your account may be charged a fee as a result of this service. This fee is in addition to any late fees charged by your school.

*Id.* ¶ 9.

Based on these allegations, Plaintiff alleges that the Follow-Up Fees "constitute unlawful penalties that are void and unenforceable under California Civil Code § 1671 []; [are] unlawful and unfair under California's Unfair Competition Law, Bus. & Prof.

Code § 17200 *et seq.* []; and [are] unconscionable under California Civil Code § 1750 *et seq.*, the Consumers Legal Remedies Act (the 'CLRA')." *Id.* ¶ 14. Plaintiff also alleges that Defendant's collection of the underlying tuition payments, Late Fees, and Follow-Up Fees violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Rosenthal Fair Debt Collection Practices Act (the "RFDCPA"), Cal. Civ. Code § 1788, *et seq. Id.* Defendant moves to dismiss all claims. Plaintiff has agreed to dismiss the FDCPA claim, so it will be dismissed without further discussion. The Court will address the remaining arguments in turn.

## II.     LEGAL STANDARD

Fed. R. Civ. Proc. 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Fed. R. Civ. Proc. 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court may dismiss a complaint under Rule 12(b)(6) based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider other materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## III. DISCUSSION

### A. The Motion is <u>GRANTED</u> as to Plaintiff's Claim Under § 1671.

Plaintiff's § 1671 claim turns on his allegation that the Follow-Up Fees applied to his account are liquidated damages that are void under § 1671.

"California law places significant restrictions on a party's ability to use a consumer contract to set what damages it will be entitled to in the event of breach." *Bayol v Zipcar*, 78 F. Supp. 3d 1252, 1255 (N.D. Cal. 2015). Section 1671 provides that, for a contract for the rental of personal goods or services for personal, family, or household purposes, a provision "liquidating damages for the breach of the contract is void except [when] it would be impracticable or extremely difficult to fix the actual damage." Cal Civ. Code § 1671(d). "Although the validity of a liquidated damages provision is a fact-based inquiry not appropriately determined on a motion to dismiss, whether a provision *is* a liquidated damages provision is a question of law for the court to decide." *Bayol*, 78 F. Supp. 3d at 1255. "California courts define liquidated damages as 'an amount of compensation to be paid in the event of a breach of

contract, the sum of which is fixed and certain." *Ruwe v. Cellco Partnership*, 613 F. Supp. 2d 1191, 1196 (N.D. Cal. 2009) (quoting *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002)). "Thus, to constitute liquidated damages, the contractual provision must: (1) arise from a breach, and (2) provide a fixed and certain sum." *Id.*

Plaintiff contends that the $40 Follow-Up Fee is a liquidated damages provision because it arises from his breach of his contractual obligation to timely pay tuition, and that it is a fixed and certain sum. Defendant argues that the Follow-Up Fee is not liquidated damages because Plaintiff has no contractual obligation to Defendant to pay the tuition timely; rather, that obligation is to his children's school. Furthermore, Defendant does not charge the $40 Follow-Up Fee to the parents; rather, Defendant charges the school that fee for the service of following up with parents who have not paid the school's tuition on time, and the school then passes that fee on to parents. As a result, the Fee is included in the billing detail Defendant sends to parents, even though Defendant itself does not charge that fee to parents.

The Court finds that Plaintiff has not adequately alleged a liquidated damages provision. The relevant contract between Plaintiff and Defendant is the Enrollment Agreement. *See* Enrollment Agreement.[1] This Agreement describes Defendant's service as "Smart Tuition receives, processes, and deposits your payments into your school's bank account." Regarding the breach component of liquidated damages, nowhere in the Enrollment Agreement does Plaintiff make any promise *to Defendant*

---

[1] Plaintiff's FAC alleges the existence of the Enrollment Agreement but it is not attached thereto. However, Defendant submitted the Enrollment Agreement. *See* Torsiello Decl. (Dkt. No. 24-1) Ex. D. Plaintiff does not challenge the authenticity of the Agreement, so the Court hereby takes judicial notice of it and considers it in connection with this motion. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims . . .The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6).") (internal citations omitted).

to pay tuition by any particular deadline. Without such a promise to Defendant, there can be no breach. Rather, the Agreement only states the truism that an untimely payment is late ("Any payment that is not received by Smart Tuition by your due date is considered late . . .") and that there may be consequences for paying late (a late payment "may receive a late fee" and the "account may be charged a fee" for the follow-up service provided to the school). This is not a promise by Plaintiff to Defendant to pay on time, so there can be no corresponding breach. Plaintiff has not pointed to any other contractual obligation he has to Defendant to pay tuition on time, nor does he dispute that he must show that his obligation to pay on time is *to Defendant*.

Plaintiff argues that "the breaches occur (late payment of tuition) in the contract between Plaintiff and Smart Tuition *and* between Plaintiff and the school." *See* Opp'n 7, fn. 2. But as noted above, the Enrollment Agreement does not include a promise from Plaintiff to Defendant to pay on time. And, if Plaintiff's claims turn in part on his contract with the school, they are inadequately pled because the operative terms of that contract are not pled in the FAC. *See, e.g., Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880) ("Where a party relies upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in haec verba, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient."). Furthermore, Plaintiff's admission that his obligation to pay timely runs at least in part to the school also raises the question of whether the school is an indispensable party. At oral argument, the Court asked Plaintiff's counsel why he didn't also sue the school, and counsel explained that doing so would not be practical because Plaintiff's children still attend the school and suing it would be bad optically. Certainly Plaintiff's concern about the optics of suing his children's school does nothing to make his claims against Defendant legally sound. In any case, the Court does not find it necessary to address whether the school is an indispensable party since the FAC as pled is otherwise insufficient.

Plaintiff relies heavily on *Bondanza v. Peninsula Hosp. & Med. Cent.*, 23 Cal. 3d 260 (1979) for his argument that a third party to the breached contract can be held liable for collecting liquidated damages. There, the plaintiffs were patients who signed an admission agreement to pay hospital charges upon discharge and, if the account was referred to a collection agency, to pay "'reasonable attorney's fees and collection expense.'" *Id.* at 263. After the hospital assigned plaintiffs' accounts to a collection agency, plaintiffs sued the hospital and the collection agency for violating the UCL, alleging that the collection fee (one-third of the principal) constituted an unlawful penalty under § 1671.

But *Bodanza* is readily distinguishable. There, the plaintiffs sued *both* the hospital and the collection agency, so the *Bondanza* Court did not expressly address whether the agency could be held liable independent of the hospital. In addition, in *Bondanza*, the breached promise (to pay the account on time) and the alleged liquidated damages clause (the patients' promise to pay the collection costs) were both contained in the same contract—the patient's contract with the hospital. The hospital then *assigned* that contract—including its liquidated damages provision—to the third-party collection agency. Here, by contrast, the breached promise (Plaintiff's promise to the school to pay on time) and the alleged liquidated damages clause (the Follow-Up Fee disclosure stated in the Enrollment Agreement) are in different contracts, and Defendant is not acting as a collections agency or assignee of the contract. Rather, as the FAC alleges, Smart Tuition "provides student billing and payments processing platforms for private schools." FAC ¶ 1. Plaintiff relies on other cases against collection agencies, but they are not persuasive for the same reasons stated above. In light of these distinctions, neither *Bondanza* nor any of the collections agency cases govern the facts here.

In sum, the only contract between Plaintiff and Defendant is the Enrollment Agreement. This Agreement does not include a promise by Plaintiff to Defendant to pay on time, so there can be no breach of that promise as required to trigger the

alleged liquidated damages provision, the Follow-Up Fee. Accordingly, Plaintiff has not shown that the Follow-Up Fee is a liquidated damage arising from any breach of his Agreement with Defendant, so he cannot state a legally cognizable § 1671 claim against Defendant.

**B. The Motion is <u>GRANTED</u> as to the CLRA Claim.**

Plaintiff alleges that the Follow-Up Fee violates two provisions of the CLRA: (1) § 1770(a)(14), which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law," and (2) § 1770(a)(19), which prohibits "[i]nserting an unconscionable provision in [a] contract." Plaintiff contends that Defendant violates these sections because it violates § 1671, and because the Follow-Up Fee is independently unconscionable. Defendant argues, first, that the CLRA does not apply, and second, that the FAC does not state a claim under either section.

Defendant argues that the CLRA applies only to transactions between a consumer and any other person, *see* Cal. Civ. Code §1761(e), but here, the transaction was between a Defendant and a private school, not a consumer. For now, the Court rejects this argument because the Enrollment Agreement is also in issue, and it is between Plaintiff (a consumer) and Defendant.

However, Plaintiff's CLRA claim nevertheless fails. Plaintiff contends that because the Agreement violates § 1671, it also violates §§ 1770(a)(14) and (a)(19). But as discussed above, Plaintiff has not alleged a violation of § 1671 because he has not alleged that he breached a contract with Defendant, and as a result, he has not adequately pled a liquidated damages provision between himself and Defendant. Thus, insofar as the CLRA claim is premised on a violation of § 1671, it fails.

Plaintiff also contends that the Follow-Up Fee is unconscionable regardless of whether it is a liquidated damages provision, and that it therefore violates both sections of the CLRA. A claim of unconscionability requires a plaintiff to plead facts supporting both procedural and substantive unconscionability. *See Walter v. Hughes*

8.

*Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1046 (N.D. Cal. 2010). "'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [] It focuses on factors of oppression and surprise." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005) (citation omitted). A contract term is substantively unconscionable if it is "so one-sided as to 'shock the conscience,' or . . . 'impose harsh or oppressive terms.'" *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998).

Plaintiff alleges that the Follow-Up Fees are substantively unconscionable because it is "unreasonably favorable to Defendant" and "unduly harsh to . . . customers" because it has "no relationship whatsoever to any damages incurred by Defendant . . . as a result of late payment by customers." FAC ¶ 62. These allegations do not plausibly plead substantive unconscionability. First, they are tethered to the premise that the Fee is a form of liquidated damages to compensate Defendant for a breach, a theory the Court rejects above. Second, allegations that a price is "unreasonable" or "that the price exceeds cost or fair value, standing alone, do not state a cause of action" for unconscionability. *Morris*, 128 Cal. App. 4th at 1323. Rather, the plaintiff has to plead that facts showing that the price is "grossly out of line with fees charged by others." *Id.* at 1323. The FAC here lacks any such allegations, so it fails to plausibly plead that the Follow-Up Fee is unconscionable. Thus, insofar as Plaintiff's CLRA claims are based on the purported unconscionability of the Follow-Up Fee, they fail.

In sum, Plaintiff has not adequately pled his CLRA claim based either on a predicate violation of § 1671, or on the unconscionability of the Follow-Up Fee. The CLRA claim is therefore dismissed.

**C. The Motion is <u>GRANTED</u> as to the RFDCPA Claim.**

Plaintiff's claim under the RFDCPA is that Defendant's attempts to collect tuition, Late Fees, and Follow-Up Fees are unfair, deceptive, and/or unconscionable in violation of the RFDCPA. Defendant argues, and Plaintiff concedes, that the

RFDCPA applies only to "consumer debts[,]" which can only arise from a "consumer credit transaction," which means a transaction in a consumer acquires "property, services or money [] on credit." *See* Cal. Civ. Code §§ 1788.1, 1788.2(e) & (f). The RFDCPA does not define "credit," but "the 'ordinary and usual meaning' of the phrase 'on credit' can be stated as obtaining something of value without immediate payment on the promise to make a payment or payments in the future." *Davidson v. Seterus*, 21 Cal. App. 5th 283, 296 (2018) (citation omitted). In other words, "on credit" entails the consumer's right to defer payment.

      Here, Plaintiff concedes that tuition payments and the Late Fees do not arise from a consumer credit transaction. However, he argues that the Follow-Up Fees arose from a special service that was first performed, and then later billed to Plaintiff's account, meaning that the service was first performed and Plaintiff was permitted to defer payment. *See, e.g., Durham v. Cont'l Cent. Credit, Inc.*, 600 F. Supp. 2d 1124, 1129 (S.D. Cal. 2008) (suggesting that if homeowner's association performed service to remedy problem for a plaintiff and later billed the plaintiff, that might count as a credit transaction). However, a number of cases have held that fees arising from efforts to collect bills that did not themselves arise from consumer credit transactions are not consumer credit transactions. *See, e.g., Phillips v. Archstone Simi Valley LLC*, No. CV155559DMGPLAX, 2016 WL 7444550, at *5-6 (C.D. Cal. Dec. 15, 2016) (surveying cases and holding that landlord's attempt to recover various fees incurred to collect plaintiff's unpaid rent not actionable under the RFDCPA because those fees "arose out of collection efforts related to [] residential rent payments, [so] there is no consumer credit transaction to bring them within the scope of the Rosenthal Act"); *Udo v. Kelkris Assocs., Inc.*, No. 12-CV-2022-IEG NLS, 2012 WL 5985663, at *2 (S.D. Cal. Nov. 29, 2012) (dismissing RFDCPA claim because "the alleged debt arose from unpaid fees and storage costs arising from the towing and storage of Plaintiff's vehicle, none of which involved any credit transaction"). The Court sees no reason to rule differently here, and finds that the Follow-Up Fee is not itself a consumer credit

transaction, nor does it arise from a consumer credit transaction. The RFDCPA claim is therefore dismissed.

**D. The Motion is GRANTED as to Plaintiff's UCL Claims.**

Plaintiff's claims under the UCL for unlawful and unfair business practices also fail because all of the predicate violations on which they are based are inadequately pled. The UCL claims are therefore dismissed.

## IV. CONCLUSION

For the following reasons, the Motion is **GRANTED** in its entirety, with leave to amend. Plaintiff may file a Second Amended Complaint within 28 days of the issuance of this order if he may do so consistent with Rule 11. The Scheduling Conference is continued to Friday, January 11, 2019, at 10:00 am.

**IT IS SO ORDERED.**

Dated: November 06, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.